Fontaine v. Gunter.

## FONTAINE vs. GUNTER.

[ASSUMPSIT ON BILL OF EXCHANGE, BY ENDORSEE AGAINST DRAWER.]

1. *Alteration of bill.*—The drawer, being indebted to the acceptors, signed his name to the first and second of a bill of exchange for the amount, using a printed form, and leaving in blank the date, time and place of payment, names of payee and drawees, and place of drawing; and sent it to the acceptors, to be negotiated by them, and the proceeds to be applied to the payment of his indebtedness. The acceptors filled up the blanks, and, by alterations, erasures, and mutilations, converted each part into an " only " bill, one of which they negotiated through an accommodation endorser in violation of the trust on which they received it; the alterations and erasures appearing on the face of each part. *Held*, that such accommodation endorser, having paid the bill, could not recover against the drawer, without proving that the alterations were made with his privity and consent.

2. *Error without injury.*—Where all the evidence is set out in the bill of exceptions, and shows that the plaintiff can never recover, the appellate court will not, at his instance, examine into the correctness of any of the rulings of the primary court.

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. E. W. PETTUS.

THIS action was brought by John Fontaine against Charles G. Gunter, and was founded on a bill of exchange for $2500, which purported to be drawn by the defendant on Fontaine & Dent, of Mobile, was dated Montgomery, January 23, 1851, payable twelve months after date, at the Bank of Mobile, and endorsed by J. Moore and Lewis McQueen.    The only plea was the general issue.

The bill offered in evidence on the trial was as follows :

"Exch. for
      $2500.                 Montgomery, Jan'y 23d, 1851.
                    Twelve months after date of this only
of exchange, pay to the order of J. Moore, at the Bank of Mobile, twenty-five hundred dollars, value received, and charge the same to account.
      "To Fontaine & Dent,              "C. G. GUNTER."
          Mobile, Ala.

It appeared on the trial, from evidence adduced by the defendant, that, being indebted to Fontaine & Dent in about the sum of $2500, the defendant signed his name to the first and second of a bill of exchange for that amount, and remitted the bill to said Fontaine & Dent, to be by them negotiated, and the proceeds to be applied in extinguishment of said debt.    The bill used by the defendant was a printed form, to which he merely signed his name, and added the amount; leaving the second, which corresponded, mutatis mutandis, with the first, in the following form :

"Second of Exch. for
      $2500.          ————————————  ———————
————————————————————— after date of this second of exchange, (first unpaid,) pay to the order of ——————
——————————, twenty-five hundred dollars, value received, and charge the same to account. .
                              "C. G. GUNTER."

The defendant's signature, and the words and figures expressing the amount of the bill, were written; the

other parts of the bill printed. On the receipt of this bill, Fontaine & Dent, or one of them, separated the two parts, filled up the blanks, and, by erasures and alterations, converted each part into an "only" bill of exchange; so that the second part assumed the form above quoted.

In the first form, the italicized words represent the blanks which were filled up by Fontaine & Dent; the words "*first unpaid*" and "*second*," which appear in the printed form, were erased by lines drawn across them with a pen; the word "*only*" was inserted above the word "*second;*" and the words "*second of*" in the left-hand corner, preceding the words "Exch. for," were torn off. In this form, said Fontaine & Dent attempted to negotiate the two bills in Mobile; but, failing to do so, they informed defendant of the fact, and he thereupon remitted to them in money the amount of his indebtedness. It further appeared that Fontaine & Dent, after failing to negotiate the bills in Mobile, sent the second to the plaintiff, at Columbus, Georgia, who was there endorsing and negotiating bills for their accommodation; that plaintiff endorsed the bill, got it discounted, and remitted the proceeds to said Fontaine & Dent. Before the maturity of the bill, Fontaine & Dent became insolvent, and the firm was dissolved by the death of one of the partners. The bill was protested for non-payment, and was afterwards paid by plaintiff. The other part of the bill, which had never been negotiated, was returned to the defendant, by one of the clerks of Fontaine & Dent, after the insolvency and dissolution of the firm, and was produced by the defendant on the trial.

The defendant adduced in evidence, against the plaintiff's objection, several letters written to him by Fontaine & Dent, one acknowledging the receipt of the draft for $2,500, another informing him of the failure of their efforts to get it discounted in Mobile, and a third acknowledging the receipt of the money subsequently remitted by him in payment of his indebtedness; also, several letters written by plaintiff to said Fontaine & Dent, showing that plaintiff received said bill now sued on, under a promise to endorse and negotiate it for the benefit of

Fontaine & Dent, and that he so endorsed and negotiated it. To each of these letters the plaintiff objected, on the grounds of irrelevancy and illegality, and reserved exceptions to the overruling of his several objections.

The plaintiff offered to prove "the character and reputation of Fontaine & Dent for honesty and fair dealing," and, in that connection, "that an offer by them of a bill such as the one sued on was not calculated to excite suspicion against it;" but the court sustained objections to each portion of the evidence, and exceptions were reserved to its rulings. The plaintiff also offered to prove, "that it was customary among mercantile men, and according to mercantile usage, to change the *second* of a set into an *only* bill, in the manner of the one here sued on;" but the court refused to allow this to be done, and the plaintiff excepted. "The plaintiff further offered to prove, by a witness who was shown to be a banker and dealer in exchange and negotiable paper, that bills similar in appearance to that before the jury were frequently and commonly negotiated in the regular course of commercial business. The court refused to allow this, saying to the counsel, in the presence and hearing of the jury, that if a bill was altered in a material part, and the alteration appeared on the face of the bill, the effect was to render the bill void; that such alteration could not be explained, by evidence of custom among bankers and dealers in exchange; and that the effect of the alteration was not a question of fact, but a question of law purely. There was no exception to this remark, but the plaintiff excepted to the rejection of said evidence. The defendant's counsel then consented that the witness might speak of the matters embraced in the last offer, and the examination of the witness was had on that point; but the court did not qualify or withdraw the opinion expressed as to the alteration of the bill. The witness then testified, that bills similar to that before the jury were often and commonly used and offered in the course of business; that he had often sold and purchased such bills himself; but that no such alterations were ever made, after the bill had passed out of the hands of the drawer, without his con-

sent. The defendant also admitted, that the *second* of bills was often and commonly altered to an *only* bill in the course of business, but always at the time of drawing. The defendant proved, that when a bill was drawn in two parts, it was customary to accept the first only, and to write on the face of the second 'first accepted,' signing the initials of the acceptors."

This is the substance of the evidence, all of which is set out in the bill of exceptions; and thereupon the court charged the jury, in effect, that if they believed from the evidence that the bill was drawn, altered, endorsed and negotiated, as above stated, then the plaintiff could not recover. The plaintiff excepted to this charge, and requested the court to give several other charges, all of which the court refused, and which require no particular notice; exceptions being reserved by the plaintiff to the refusal of each.

The rulings of the court on the evidence, and in the instructions to the jury, are now assigned as error.

E. J. FITZPATRICK, and MARTIN, BALDWIN & SAYRE, for the appellant.—1. Gunter, in leaving the blanks as he did, gave Fontaine & Dent an implied authority to fill them up.—Montague v. Perkins, 22 English Law & Eq. R. 520; Herbert v. Huie, 1 Ala. 18; Roberts v. Adams, 6 Porter, 361. If the interlineations appeared to be in the same handwriting in which the blanks were filled, it would have seemed, to all persons not informed of the facts, to have been done by the same authority. These facts distinguish the case from those in which alterations have been made after the bill was complete. The law itself presumed the alteration, if in the same handwriting, to have been done before the bill was signed.—Beaman v. Russell, 20 Vermont, 205; Matthews v. Coalter, 9 Missouri, 696; North River Meadow Co. v. Shrewsbury Church, 2 New Jersey R. 424; 1 Greenl. Ev. (ed. of 1854,) § 564, and notes. The plaintiff, in taking the bill, ought not to be required to be more skeptical than the law itself. By leaving the blanks in the bill, Gunter enabled the drawees to occasion the loss; and therefore, as between

himself and the plaintiff, he must bear it.—Robertson v. Smith, 18 Ala. 227; Herbert v. Huie, 1 Ala. 18; Lickbarrow v. Mason, 2 Term R. 63.

2. The plaintiff is, on the evidence set out in the record, a *bona-fide* holder in due course of trade.—Kimbro v. Lytle, 10 Yerger, 417; Nichol v. Bate, 10 Yerger, 433; Bank of Mobile v. Hall, 6 Ala. 639; Barney v. Earle, 13 Ala. 102; Saltmarsh v. Tuthill, 13 Ala. 398; Chitty on Bills, 209–10.   Being a *bona-fide* holder, without notice, he is not affected by any defenses existing between the drawer and acceptor.—Minell & Co. v. Reed, 26 Ala. 732.

3. The reputation of Fontaine & Dent for honesty and fair dealing, and the custom among mercantile men to change the first or second into an only bill, in the manner of the bill sued on, were relevant and material as evidence, in determining the question whether the bill was on its face suspicious.

4. The letters of Fontaine & Dent to Gunter, and of plaintiff to Fontaine & Dent, had no relevancy to the issue, and should have been excluded.

Wm. P. & T. G. CHILTON, and WATTS, JUDGE & JACKSON, *contra.*—1. The alteration of the bill by Fontaine & Dent in the manner disclosed by the evidence, without the knowledge or consent of Gunter, rendered it wholly invalid as to him, as much so as if it had been forged; and this, although it might be in the hands of an innocent holder.—Chitty on Bills, 204–6; Chitty on Contracts, 667–9; Byles on Bills, 143; Master v. Miller, 4 Term R. 320; S. C., 2 H. Bla. 140; Cowie v. Halsall, 4 Barn. & Ald. 197.

2. But the plaintiff was not an innocent holder for value.   He received the bill from the acceptors, by whom the alterations were made, and negotiated it for their benefit, and as their agent, if indeed he was not interested with them in the use made of its proceeds.   Consequently, he can occupy no higher position than Fontaine & Dent.   Moreover, the alterations and mutilations rendered the bill suspicious on its face; and this was sufficient to put him on inquiry, and thus charge him with implied

notice of the breach of trust committed by Fontaine & Dent.—Thompson v. Armstrong, 7 Ala. 256; Wallace v. Branch Bank at Mobile, 1 Ala. 565; Boyd v. Macon, 11 Ala. 822; Brewer v. Morgan, 13 Ala. 551; Chitty on Bills, 212.

3. Whether the bill was suspicious on its face, was a question of law; and the evidence of a custom among commercial men, thus to alter bills, was not admissible. Jewell v. Center & Co., 25 Ala. 498; Bouvier's Law Dictionary, tit. *Law merchant*.

4. The character of Fontaine & Dent was not a question in issue before the jury.

5. The letters read in evidence had each a material bearing on the case, and were immediately connected with the transactions out of which plaintiff deduces his right of recovery.

STONE, J.—It is settled in England, by a well-considered and uniform current of decisions, that any alteration of a bill of exchange, in a material part, by which the liability of the parties to be charged is increased, avoids the instrument, unless it be shown that such alteration was assented to by those parties whose liability is thereby increased. Further, that if a bill of exchange appear on its face to have been so altered, the *onus* rests on the person asserting rights under it, of showing that the alteration was made before the bill was executed, or that it was assented to by the parties to be bound thereby.—Johnson v. Duke of Marlborough, 2 Stark. 313; Henman v. Dickinson, 5 Bing. 183; Bishop v. Chambre, 3 Car. & P. 53; McMicken v. Beauchamp, 2 Miller's La. Rep. 290; Knight v. Clements, 8 Ad. & El. 215; Addison on Contracts, 1085; Bailey on Bills, 98–9; Chitty on Contracts, 679; Livingston v. Butler, 2 B. & P. 283.

There are some American decisions, which conflict with this principle, and hold that a mere alteration or erasure of a bill of exchange, without more, does not cast on the plaintiff the *onus* of explaining such alteration.—President and Directors of Cumberland Bank v. Hall, 1 Halst. 215; Rankin v. Blackwell, 2 Johns. Cas. 198. This last

case was materially shaken, if not entirely overruled by Jackson v. Osborn, 2 Wend. 555.

Messrs. Cowen & Hill, in their notes to Phillips on Evidence, say, "It is agreed by all the cases, that when the alteration appears to be suspicious on its face, and is not duly noted; as if the paper have been cut close, or a mutilated figure be left, or the ink differ, or the handwriting be that of a holder interested in the alteration, &c., the *onus* lies with the party who claims that the alteration was genuine."—See edition by Van Cott, part 1, 462, and authorities cited; Thompson v. Armstrong, 7 Ala. 256.

Without determining, at this time, whether we will adhere to the English rule as above declared, there can be no question of the correctness of the rule last above stated. Let us submit the bill of exchange sued on in this case to this test. There is no controversy as to the condition and appearance of this bill, when it was received by the plaintiff. Its face is daguerreotyped in the bill of exceptions, as nearly as it was possible to do so. We may then assume this appearance to be one of the uncontroverted facts on the trial below. The upper left-hand corner of the bill was torn off, carrying with it the word *second*, as preceding the words, "*Exch. for.*" The printed word "second," in the body of the bill, had black lines drawn through it, and the word "only" written over it. The printed words "first unpaid," had also black lines drawn through them. These alterations and erasures rendered the bill suspicious on its face, They were well calculated to put the plaintiff on inquiry; and failing to give heed to these monitions, we think he cannot claim to be a *bona-fide* holder without notice.

The consideration of this bill being thus opened to the defendant, there can be no question that the sale of this bill, under the circumstances disclosed in the record, was a gross violation of trust and confidence. In fact, the abuse of trust is also one of the uncontroverted facts of this case. The plaintiff, as to his legal rights, stands to this transaction in a position no more defensible than Fontaine & Dent would occupy, if they were suing upon

it.—Saltmarsh v. Tuthill, 13 Ala. 390; Saltmash v. P. & M. Bank, 14 Ala. 668.

From the principles above stated, it is clear that the plaintiff in this case cannot recover, unless he proves that the erasures and alterations of the bill were made with the privity and consent of the defendant. The bill of exceptions sets out all the evidence, and it is equally clear that no such proof can be made. In fact, there is not a shadow of pretense that Fontaine & Dent, or either of them, had authority to make the alterations. Under these circumstances, it is manifest the plaintiff never can recover.

We will not inquire whether the circuit court did or did not err in the various rulings on the introduction of evidence, and in the various charges excepted to. If in any of them there was error, it was error without injury. See Dunlap v. Robinson, 28 Ala. 100; Saltonstall v. Doe d. Riley, *ib.* 164, and authorities cited.

There is no error in the record available to plaintiff, and the judgment of the circuit court is affirmed.

RICE, C. J., not sitting.