# Toomer, Sykes and Billups *v.* Rutland *et al.*

| 57 | 379 |
|----|-----|
| 101 | 207 |

| 57 | 379 |
|----|-----|
| 104 | 583 |

| 57 | 379 |
|----|-----|
| 127 | 294 |

*Bill in Equity to Foreclose Mortgage.*

1. *Effect of certain alteration of commercial paper, by the voluntary act of the holder.*—The alteration of commercial paper, by the voluntary act of the holder, increasing or injuriously affecting the liability of the debtor—or party bound by it—where a *bona fide* purchaser is not concerned, vitiates the paper, and discharges the party injured, or who could have been injured by it; and the party claiming under the instrument cannot fall back or recover on the original contract.

2. *Material alteration of other paper into commercial paper.*—The alteration of paper not commercial, by inserting in it, without authority, words which convert it into commercial paper, is a material alteration.

3. *Delivery of promissory notes, with power to fill up blanks of the time and place of payment.*—Negotiations for a loan resulted in an agreement to make the loan, upon the agreement of the borrower, among other things, to give security by note and mortgage, and to ship crops for sale, &c. The borrower executed a mortgage and filled it up, and (the time for payment not having been definitely agreed upon) signed a printed form of a promissory note, except as to blanks left in for time and place of payment, and gave them to her agent, who forwarded them to the lender, in a letter stating that he had left "the dates blank, which you will fill out, giving as long as possible to gather the crops." The lender received the note and filled up the blanks so as to make the note mature "*first of November,*" after the date, and the place of payment "*Southern Bank of Alabama, at Mobile,*" the place where the lender did business—

*Held :* 1. If the delivery had been general, authority to perfect the instrument, so as to convert it into a security of the character intended by the parties, would be implied—as that intention was justly inferable from their antecedent negotiations, and from the usages of the country. But,

2. When express authority is given to fill the blanks, in one respect only, that authority must be pursued, and no other can be exercised except such as is necessary to make the paper a valid security.

APPEAL from Chancery Court of Bullock.

Heard before the Hon. N. S. GRAHAM.

The chancellor, in the final consideration of the case, decreed and ordered that the bill be dismissed ; and his decree is now assigned as error. The opinion of the court, with the abstracts of briefs of counsel, give a clear idea of the facts of the case.

H. C. TOMPKINS, NORMAN and WILSON, for appellants. 1. There was no alteration in the note. The proof was that on the 30th May, 1872, C. L. Croft wrote to complainants on behalf of Mrs. Rutland, that she wanted to borrow, for four

or five months, $1,500, by "giving a mortgage on her plantation" and growing crop, and that the land was "unencumbered." That on the 11th June, 1872, Croft wrote (for Mrs. R.,) to complainants, as follows : "Enclosed find papers of Mrs. E. A. Rutland, handed over to me by Arrington & McCall, properly signed, with dates blank, which you will fill out, giving her as long time as possible to gather the crop. She wishes you to send the money to me for her, advising her of the same by letter." That accompanying this letter was a note, with blanks unfilled, of which the following is a copy :

"UNION SPRINGS, ALA., June 10, 1872.

"———— after date I promise to pay to Toomer, Sykes & Billups, or order, fifteen hundred and eighty-eight 14–100 dollars, at ————, value received.

"E. RUTLAND."

"$————. Due, ————."

That accompanying said note, with blanks and letter, was the mortgage, to foreclose which appellants filed their bill. That the mortgage had left in it only blank as to date of payment. That the words and characters italicised in the above copied note were printed. That after appellants received said note and mortgage, they filled the first blank with "on the first of November," filled the second blank with "Southern Bank of Alabama, at Mobile," and then sent to the maker of said note and mortgage, in the manner requested, fifteen hundred dollars ; and we insist that the filling of the blanks and the sending of the money were one and the same transaction ; that the promissory note was never fully executed until the blanks were filled, and that in the completion of the promissory note by appellants they were authorized by Mrs. Rutland to fill all the blanks left by her in said note to suit their own wishes. If Mrs. R. did not wish appellants to fill the blank, as to place of payment, it was very easy for her to have entirely erased the blank, or to have put in it the place of payment at which she desired it to be made payable.—2 Parsons on Notes and Bills, 566 ; 7 American Reports, note, 669.

2. If there was an alteration, it was with the consent of Mrs. Rutland, the maker, and if so, this does not avoid the note.—1 Greenleaf on Ev. § 568 a. And this consent may be *implied* from circumstances.—1 Greenleaf on Ev. § 568 a, note 4 ; *Boardman v. Gore & Williams*, 1 Stewart, 517 ; *Master v. Miller*, 1 Smith's Leading Cases, 963, 964.

3. Now, it is a fair implication, from all the circum-

[Toomer, Sykes and Billups v. Rutland et al.]

stances, that Mrs. R., when she sent the note to appellants, knew these blanks were in it, and was willing that appellants should fill them as they should desire. That appellants were justified by the circumstances and by the language used in the letter accompanying the note and mortgage, to read the letter and construe it as saying, " I send you the note, with blank as to the place of payment and as to time, and mortgage blank as to time. I want your money, will pay you for the use of it, and expect and intend to pay it whenever and wherever it falls due. I care not where you make it payable ; suit your own convenience ; I am willing to pay the money wherever it suits you best, but I want you to give me as much time as possible. That is all I feel anxious about ; time is what I want, and as much time as you can possibly give. I don't care where you make the note payable ; I know when it falls due I shall find it ; put in the blank place for payment Union Springs, where I live, Montgomery or Mobile, where you live, or any other place."

If the language of this letter, in connection with the relative situation of all the parties—appellant's commission merchants residing at Mobile, defendant a planter residing at Union Springs, and wanting to borrow of appellants the money—authorized complainants to read the letter in this way, then she gave her consent ; or her consent may be inferred, and if so, the note is not avoided.—Authorities above cited.

If the alteration was not with the consent of Mrs. Rutland, then if it was without fraudulent intent, or made under th e mistaken belief that they had the right to so alter the note by filling in the blank place of payment, then if appellants could not recover on the note itself, they can on the mortgage, which recites that it was given to secure the debt. 2 Parsons on Bills and Notes, 571 ; *Hunt v. Gray*, 10 American Rep. 232.

4. Fraud must be proven, &c.; and if there be any presumptions of a fraudulent intent in this transaction, we insist that such presumptions are entirely rebutted by the evidence, the blank left in the note by defendant herself, and not a single circumstance tending to show a prohibition on her part against appellant's filling it, her solicitnde as expressed by herself being only for as much time as possible, and her utter silence as to the blank for place of payment. In *White v. Hays*, relied on by defendants, the blank was filled contrary to express instructions, and the *dicta* in that case we insist is not supported by the authorities cited, and is

only applicable where there is an alteration without fraudu-lent intent, of bills of exchange and other commercial paper where the party sought to be held liable was only liable on *his endorsement* or *acceptance of the bill itself*, and not on the *original consideration;* and the bill of exchange or instru-ment being *destroyed* by mere alteration, the liability fell with it.

But equity looks to the *debt* secured by the mortgage, and not to the *shape* the debt assumes. The debt is not merged in the note; the note is only a part, or one shape of the evi-dence of the debt.—*Cullum v. Br. Bk.* 23 Ala. 797; note to *Marlin v. Miller*, 1 Smith's Leading Cases (490 c), and author's comments; same case, 961.

5. Almost, if not all of the cases, which decide that where there is an alteration no recovery can be had on the original consideration, are cases decided on bills of exchange, bonds or other specialities, or in simple contracts where there is no other evidence of the debt than the one *altered;* on bills of exchange, because it is only by virtue of the drawing, acceptance, or endorsement of the bill itself. The party against whom the alteration was made, could be held liable on bonds and specialties, because the debt was merged in the bond or specialty. Some, and Mr. Greenleaf says all, were decided under a stamp law, which required a stamp every time an alteration was made, and which made, not only the instrument, but the debt itself void, if the statute was not complied with.

STONE & CLOPTON, and FLEMING LEAN, for appellees.
1. The material alteration of a promissory note, without the consent of the maker, vitiates it.—*Fontaine v. Gunter*, 31 Ala. 258; *White v. Hoss*, 32 Ala. 430; *Holmes v. Tremper*, 7 Amr. Reports, 661; *Calkins v. Whistler*, 4 Amr. Reports, 236; 1 Hilliard on Cont. 372–380; Chitty on Cont. 591, 678; *Morehead v. Parksburg Nat. Bk.* 13 Amr. Rep. 636; *Wood v. Steel*, 6 Wall. 80; 1 Smith's Leading Cases, 490 c.

2. The alteration of the note in this case is a material alteration.—Revised Code, §§ 1833, 1839; 6 Porter, 384; 7 Ala. 19; 13 Amr. Rep. 636.

3. If the alteration of the note is material, complainants cannot recover upon the contract for which it was given 1 Greenleaf, § 565; *White v. Hoss*, 32 Ala. 430.

4. If the note is vitiated, the mortgage, being a mere incident to the note, falls with it.

5. When a note or contract is proven to have been

altered so as to render it void, it devolves upon the party seeking to enforce it, to show that such alteration was made with the consent of the maker or by a stranger.—*Davis v. Carlisle*, 6 Ala. 707 ; Parsons on Notes and Bills, 575.

6. Croft, as agent of Mrs. Rutland, had no right or authority to make the note payable at bank, if he had done so ; nor would Mrs. Rutland have been bound by it; for complainants, in dealing with Croft, as the agent of Mrs. R., were bound to know the extent of the agent's authority. *Van Epps v. Smith*, 21 Ala. 317.

7. In the letter, written by Croft to the appellants, he stated that there was a blank left for *date*. This was authority to fill up as to *time*, but the exclusion of authority to fill any blank for any other purpose.

BRICKELL, C. J.—The primary object of the bill is the foreclosure of a mortgage on certain lands, executed by the appellee, Elizabeth A. Rutland, to the appellants, bearing date 10th day of June, 1872, to secure the payment of a promissory note made by her, payable to them on the first day of November, 1872, for the sum of fifteen hundred and eighty-eight 14–100 dollars. The mortgagor answers, and pleads *non est factum*. The averments of the answer in support of the plea, are, that the note was without the consent of the mortgagor, after it was made and delivered to appellants, altered by the insertion in the body thereof of the *Southern Bank of Alabama, at Mobile*, as the place of payment. The facts are, that one Croft, as the agent of Mrs. Rutland, opened negotiations with the appellants for a loan, or advance of money. These negotiations seem to have resulted in an agreement on the part of the appellants to loan Mrs. R. fifteen hundred dollars, on her agreement to ship them cotton for sale on commission, and for the repayment of the money loaned, and on her execution of a mortgage on real estate, unencumbered, to secure the loan. The time at which the money loaned should become payable does not seem to have been definitely fixed. On the 10th day of June, 1872, the mortgage was executed, and the note for the money to be loaned. A printed form of a promissory note, having blank spaces for the time and place of payment, and for amount and name of payee, was filled up, except as to time and place of payment, and was signed by Mrs. Rutland. The note and mortgage were by Croft, sent by mail to the appellants, whose place of business was in Mobile. The following is a copy of the letter, in which they were enclosed:

"UNION SPRINGS, ALA., June 11, 1872.

" *Messrs. Toomer, Sykes & Billups, Mobile, Ala.:* Gentlemen :· Enclosed find papers of Mrs. E. A. Rutland, handed over to me by Arrington & McCall, properly signed, with dates blank, which you will fill out, giving her as long a time as possible to gather the crop. She wishes you to send the money to me for her, advising her of the same by letter.

" Yours, respectfully,

" C. L. CROFT, per Bower."

On receipt of the note and mortgage, the money agreed to be loaned, fifteen hundred dollars, was sent by the appellants to Croft, and he placed it to the credit of Mrs. Rutland. The note was dated, *Union Springs, Ala., June* 10, 1872, when signed by Mrs. Rutland, and the appellants caused the blank spaces to be filled up, so that the time of the maturity of the note was *on the first of November,* after date, and the place of payment at *Southern Bank of Alabama, at Mobile.* As the note was signed it had not the words, *on the first of November,* nor the words, *Southern Bank of Alabama, at Mobile.* It is the insertion of these last words, which is the foundation of the plea of *non est factum,* and which it is insisted avoids the note. There is no dispute about the facts, and the sole question on this branch of the case, is, whether this is an unauthorized material alteration of the note.

1. It has been settled by former decisions, that the alteration of paper not commercial, by the voluntary act of the holder, increasing or injuriously affecting the liability of the debtor or party bound by it, vitiates the paper; discharging the party injured, or who could have been injured.—*Brown v. Jones,* 3 Port. 420; *Davis v. Carlisle,* 6 Ala. 707; *White v. Hoss,* 32 Ala. 430; *Glover v. Robbins,* 49 Ala. 219. The principle has been applied, and is equally applicable to alterations of commercial paper, when a party, not a *bona fide* holder, seeks to enforce it.—*Fountaine v. Gunter,* 31 Ala. 258. The theory in which the principle has its foundation, is the necessity of protecting the parties who may be charged on such instruments, from acts prejudicial to them, done in their absence, without their consent, against which they can not guard. The motive of the creditor in making the alteration may not be fraudulent—as in the present case, *mala fides* may not be imputable to him; yet, as the alteration changes the legal identity and effect of the instrument, the debtor may well say it is not the contract into which he entered, and he is not, therefore, bound by it, and that the identity and legal effect of the contract into which he did enter, has

[Toomer, Sykes and Billups v. Rutland et al.]

been voluntarily destroyed by the creditor, ceasing to exist. *Wood v. Steele*, 6 Wall. 80. The principle does not rest on the hypothesis that fraud is an indispensable element of the alteration—it proceeds as well on the necessity of preventing, as punishing of fraud.—*Glover v. Robbins, supra.*

The authorities to which we have already referred, have settled, as the law of this State, that the party claiming under the instrument, can not fall.back on the original contract, nor can he recover on the original consideration. The reason of which, as fully explained by RICE, C. J., in *White v. Hoss, supra*, is the necessity of guarding against and punishing all tampering with the instrument the parties have entered into, and made the sole memorial and exposition of their contract. He says : "To allow the payee, after he had designedly made a material alteration in the note, without the assent of the maker, to recover upon the contract for which the note was given, would be to depart from the sound and just principle, that no one shall be permitted to take the chance of committing a fraud, without running any risk of losing by the event when it is detected."

2. It has not been doubted that the alteration of the present note converting it from a note payable generally, into a note payable in bank, is material, making it a different contract from what it was when delivered to the appellants. When delivered, it was not commercial paper, and was open in the hands of a transferree, though he acquired it for value before maturity, without notice, to all defense which the maker could prefer against the payee. As originally made, the maker had the right to make payment, or tender payment to the holder wherever he could be found. As changed, it was the duty of the maker, and he had the right to pay only at the Southern Bank of Alabama. The alteration destroyed the legal identity of the note, annulling it as to the maker and mortgagor.—*White v. Hoss, supra; Courie v. Halsall*, 4 Barn. and Ald. 197 ; *Bank of America v. Woodworth*, 18 Johns. 315 ; 19 *ib.* 391 ; *Nagro v. Fuller*, 24 Wend. 374 ; *Oakey v. Wilcox*, 3 How. (Miss.) 330.

3. It is true generally, that if a party to negotiable paper intrusts it to another in an imperfect state, an authority to perfect it will be implied. The rule is of most usual application, when innocent third parties have acquired the paper after its perfection. In the present case, the controversy does not involve the rights of such parties, and the inquiry is, what authority was conferred by the maker on the appellants, the payees, by the delivery of the note, with the time

(26)

and place of payment left in blank, though the form of the note indicated, not only that the insertion of a time, but also a place of payment, was necessary to perfect it. If the delivery had been general, certainly authority to perfect the instrument, so as to convert it into a security of the character intended by the parties, as that intention was justly inferable from their antecedent negotiations, and from the usages of the country, would be implied. But when express *authority* is given to fill the blanks, in one respect only, that authority must be pursued, and no other can be exercised; certainly no other, unless it is essential to the perfection of the instrument as a valid security. The instrument, as it left the hands of the maker, though no time of payment was expressed, and no place of payment was designated, would have been a valid promissory note, if the parties had not contemplated a further act for its completion. It would have contained an absolute, unconditional promise for the payment of a certain sum of money to the appellants, who are inserted as the payees in the body of the note. Though it expressed no time of payment, the law would have presumed it was payable *on demand,* and courts would have construed it as if these words had been inserted on its face. A place of payment is not an essential of a promissory note at common law, or under the law-merchant. It is an ingredient under the law of this State, of negotiable or commercial paper only, not of the paper in general use in the community. The negotiations preceding the making of the note, do not indicate any purpose on the part of the appellants to demand, or the intention of the maker to become bound on any other than the paper in ordinary use. When as between the immediate parties, the law implies in the one to whom an instrument imperfect in form is intrusted authority to perfect it; the perfection of it, so that it may not be mere blank paper, is the purpose. A general, unlimited authority to correct it into any instrument, of any kind or character, can not be implied. This note would have been perfect, conforming to the antecedent negotiations of the parties, a valid security for the payment of money, answering the description of it given in the mortgage, if the appellants had simply inserted the time it was to run, and that time had been such that the maker could have been in readiness, by the shipment of cotton, then growing, to meet it. Nothing was committed to the discretion or power of the appellants but the fixing of the time of payment. Passing beyond this, they exceeded the express authority conferred. *Davidson v. Lanier,* 4 Matt. 447. An implied authority, to

[Bryan v. Hendrix.]

correct it into commercial paper, by the filling of the blank space, with a bank as the place of payment, is not necessary to the perfection of the paper; nor is it necessary to conform the paper to the intention of the parties, as it is inferable from their previous negotiations, or the usages of the country. When the time of maturity was fixed, the express power was exhausted, and the paper was a valid security. The inference from the place of payment not being designated, is, that the note shall be payable generally, and not subjected to the operation of the commercial law. This corresponds with the usage in transactions not between merchants, or when the paper is not made by a merchant. The implied authority to fill blanks can not be extended beyond such insertions as are necessary for the perfection of the paper.—*Bruce v. Westcott,* 3 Barb. 374. The insertion of a bank as the place of payment, changing the character of the paper, was unauthorized.

It is not necessary to consider whether the bill is, or is not, multifarious, as in no event could the appellants claim a foreclosure of the mortgage.

Let the decree be affirmed.

