## Delta Bag Company v. William H. Kearns.

### Gen. No. 11,171.

1.   STOPPAGE IN TRANSIT—*right of.*   The right of stoppage in transit between the seller and buyer of personal property arises upon the insolvency of the latter and continues until the carrier actually delivers the goods to the buyer, or upon his order, or to a *bona fide* purchaser holding a bill of lading indorsed by the buyer.   A mere resale by the buyer without an actual delivery of the goods or an assignment of the bill of lading therefor, does not defeat such right.

2.   INVOICE—*effect of, to pass title.*   An invoice or bill of lading does not in itself operate to pass title.

3.   PERSONAL PROPERTY—*when title to, does not pass.*   Where goods are shipped by one to another, but are, before they reach their destination, stopped in transit because of the insolvency of the consignee, and where such consignee has attempted to make a resale of such goods, such resale is not effected where the purchaser did not receive an order

upon the railroad company for such goods and did not have a bill of lading therefor; and the subsequent possession of such goods by such purchaser, acquired by means of a replevin suit, does not alter the case, notwithstanding such purchaser may in perfect good faith have paid his money in expectation of getting the goods in question.

4. ELECTION OF REMEDIES—*when, does not operate as an estoppel*. Where a particular remedy is resorted to without full knowledge of all the facts, an estoppel is not created, and a right to adopt a different remedy exists upon acquisition of complete knowledge of all the facts.

5. INSTRUCTION—*must be based upon evidence*. An instruction is improper which is not predicated upon the evidence.

6. LETTER—*when, incompetent*. In a case where the consignor of goods which, before delivery, were by him sought to be stopped in transit, is seeking to recover the same from one who has purchased the same from the consignee, it is not competent to receive in evidence a letter from the attorneys of such consignee, demanding payment from such purchaser for such goods.

Action of replevin. Appeal from the Circuit Court of Cook County; the Hon. ABNER SMITH, Judge, presiding. Heard in this court at the March term, 1903. Reversed and remanded. Opinion filed February 25, 1904.

SMITH, HELMER & MOULTON, for appellant.

WILLIAM A. DOYLE, for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

Appellant, a corporation doing business in New Orleans, February 26, 1900, brought replevin against appellee, who resides and does business in Chicago, to recover a carload of burlaps. The declaration also contains a count in trover. Appellee pleaded *non cepit* and *non detinet* and other pleas to the replevin counts, not guilty to the trover count, and a further plea that appellee had brought a prior replevin suit for the same goods, which had been adjudicated in his favor, and of which suit and its pendency appellant had notice; also an additional plea of estoppel by reason of certain matters alleged therein. After issues made, a trial before the court and a jury resulted in a verdict of not guilty and judgment thereon, from which this appeal is taken.

It appears from the evidence that appellee had, prior to the commencement of this suit, converted the property to

his own use, and therefore the appellant's right of recovery, if any, is on the trover count only.

As a result of previous negotiations by telegraph between appellant and G. E. Daniels & Son, of New York city, dealers in burlaps there, the former sold to the latter the goods in question and shipped the same to Chicago over the railway of the Illinois Central R. R. Co., which issued its bill of lading that was delivered to appellant at New Orleans on February 7, 1900, and in which Daniels & Son are named as consignors as well as consignees. This bill of lading on its receipt by appellant was sent, together with an invoice of the goods, to Daniels & Son at New York; but was never indorsed by them, never came to the possession of appellee, and was returned to appellant by the assignee of Daniels & Son at a later date, but just when does not appear. On or about the same day Daniels & Son sent a bill of the same goods, which is referred to in the evidence and briefs as an invoice, to appellant at Chicago, which he says was received by him on February 9, 1900, and shows a credit thereon of $900, leaving a balance due from appellee to Daniels & Son of $971. The credit appears to have been by reason of a draft sent by appellee to Daniels & Son under date of December 9, 1899, which it is claimed, and the evidence tends to show, was advanced on account of the goods in question. On the same day that appellee received this bill he also received a telegram from R. G. Dun & Co. to the effect that Daniels & Son had made an assignment for the benefit of their creditors. He then went to the freight agent of the Illinois Central R. R. Co. at Chicago, from whom he ascertained that the car of burlaps in question was in Chicago, and made demand upon the agent of the railroad company that the burlaps be delivered to him, which was refused. He then commenced a suit in replevin, on which, after a payment of freight to the railroad company, he received the goods in question. To recover the goods from appellee, appellant brought this suit on the 26th day of February, 1900.

The principal question presented is whether the appellant

had a right to stop the goods in transit before they were actually received by Daniels & Son, the consignees. Other minor questions raised will be considered so far as deemed material.

On the same day that Daniels & Son made an assignment for the benefit of their creditors, appellant, at their request, had wired them at New York the total marks and yardage of the goods shipped, and in that way Daniels & Son had the information by which they made their bill which was sent to appellee, though he says he received it on February 9. He is probably mistaken as to the date of its receipt. About February 12 or 13, 1900, appellant also received word at New Orleans of the assignment of Daniels & Son, and at once tooks steps to prevent the delivery of the burlaps to them by notifying the railroad company at New Orleans to stop the car in transit, and by a telegram to its treasurer, Adolph Elsas, at Chicago, to stop the delivery of the car containing the goods. Elsas at once notified the commercial office of the railroad company not to deliver the goods, and the company promised to look up the matter. On the following day the railroad company advised Elsas that the goods had been taken by appellee on his replevin suit. Whether appellee received the goods on the replevin suit before the railroad company was notified not to deliver the goods, is not clear from the evidence, but we think that fact is immaterial.

The right of stoppage *in transitu* as between a seller and buyer of personal property arises upon the insolvency of the latter and continues until the carrier actually delivers the goods to the buyer, or upon his order, or to a *bona fide* purchaser holding a bill of lading duly endorsed by the buyer. A mere resale by the buyer without an actual delivery of the goods or an assignment of the bill of lading therefor, does not defeat such right of stoppage. Benjamin on Sales, secs. 836 and 862; Angell on Carriers, secs. 340–341; Hutchinson on Carriers, sec. 409; 2nd Redfield on Rys., secs. 10 and 11, p. 109; Harris v. Hart, 6 Duer, 606; Mohr v. R. R. Co., 106 Mass. 67; 23 Am. & Eng. Ency.

Delta Bag Co. v. Kearns.

Law (1st ed.) 930, and cases cited; Sherman v. Ruger, 55 Wis. 346; O'Brien v. Norris, 16 Md. 122-30; McElwee v. Met. L. Co., 69 Fed. R. 302-14; Pattison v. Culton, 33 Ind. 240.

In Hutchinson on Carriers the author says, in speaking of the right of stoppage *in transitu:* "If after the vendor has delivered the goods out of his own possession, and has put them into the hands of the carrier for delivery to the buyer, he discovers that the buyer is insolvent, he may retake the goods, if he can, before they reach the buyer's possession, and thus avoid having his property applied to paying debts due by the buyer to other people. This right of the vendor of the goods is held to continue from the time he parts with their possession until they have come into the actual possession of the buyer, and may be enforced by him, no matter into whose possession they may have come in the course of the transportation, at any time before their delivery to the buyer or to his agent, or to a purchaser of them from the buyer, by a *bona fide* indorsement and transfer of the bill of lading."

In the 23rd American & English Ency. (1st ed.) it is stated (at page 930) that "an assignment by the buyer for the benefit of his creditors does not defeat the right of stoppage *in transitu;* nor can a creditor of the buyer defeat the right by attaching the goods before delivery."

These statements of the text writers are in effect sustained by the cases cited, and are in accord, as we believe, with the general trend and weight of authority.

The appellee claims to have been an innocent *bona fide* purchaser and sub-vendee, and that he rightfully obtained the possession of the goods. The evidence tends to show that Daniels & Son, when they purchased the goods of appellant, intended to resell them to appellee, and also tends to show that such a resale was in fact made. This is indicated by the bill which appellee says he received on the 9th of February, as well as by the telegrams which passed between appellee and Daniels & Son, when considered in the light of appellee's evidence. The fact, however, remains

that appellee did not get possession of the goods by virtue of any order or direction of Daniels & Son, nor did he ever get the bill of lading which was sent by the appellant to Daniels & Son. On the contrary, the bill of lading was returned to appellant and was never indorsed. The invoice or bill sent by Daniels & Son to appellee did not pass any title to him. Dows v. Bank, 91 U. S. 618–30, and Ky. Refg. Co. v. Globe Refg. Co., 42 L. R. A. 356. Notwith-standing the intention of Daniels & Son to make a resale of the goods to appellee, the fact that appellee had no order upon the railroad company from Daniels & Son for their delivery, and not having the bill of lading in his possession, no title passed to him, and his possession acquired by virtue of the replevin suit cannot avail him, though he may have, in perfect good faith, paid his money with the expectation of getting the goods in question. No case cited by appellee bears out his contention that he became rightfully possessed of the goods by virtue of the replevin suit. The cases most nearly in point are R. R. Co. v. Freed, 38 Ark. 614–27, and Treadwell v. Aydlett & Co., 65 Tenn. 388, both of which are clearly distinguishable from the case at bar.

In the Treadwell case D. purchased goods of G. and directed them to be shipped in the name of D. as consignor to A., the bill of lading being taken in the name of D. to A. as consignee. It was held that by this arrangement G. recognized the right of D. to control the goods as owner, and by the consignment to A. the title was thereby vested in the latter. The court, however, say that the transit "is held to continue from the time the vendor parts with the possession until the purchaser acquires it; that is to say, from the time when the vendor has so far made delivery that his right of retaining the goods, and his right of lien, are gone, to the time when the goods have reached the actual possession of the buyer." The difference between that case and the one at bar is that the goods were not consigned to appellee, but while the consignment was in form from Daniels & Son to themselves as consignees, it was in fact a consignment from appellant to Daniels & Son, who

never got the actual possession of the goods, nor gave appellee any order for such possession, nor did they indorse the bill of lading, but returned it to appellant.

The Freed case is somewhat similar to the Treadwell case in its facts, and the court holds substantially in the same way as in the Tennessee case, but specially distinguishes it because of the fact that a third person was named as consignee by arrangement between the original purchaser and seller, and held that if the delivery was to be to the original purchaser or to his use at any named place, " the right of stoppage remains until he receives them."

Numerous cases are cited by counsel for appellee to the effect that the delivery of the goods by appellant to the railway company, naming Daniels & Son as consignees, was a delivery to Daniels & Son, and passed the title from appellant to them. This as a general proposition is no doubt true, but it does not have the effect of defeating appellant's right of stoppage *in transitu* until there has been an actual delivery to the consignee or he has transferred by assignment the bill of lading to a *bona fide* subvendee. See authorities first above cited.

A further contention by appellee is that appellant is estopped from bringing this suit because he says, that with full knowledge of all the facts in relation to the sale and delivery to Daniels & Son, and that the goods had been obtained by appellee in the replevin suit, appellant begun suit in attachment against Daniels & Son for the purchase price of these same goods, and served appellee as garnishee, after advising him to dispose of the goods and requesting him to hold the balance due to Daniels & Son subject to the garnishment. This contention is not sustained by the evidence. When the attachment suit referred to was begun, neither appellant nor its representative, who caused the suit to be commenced, had any knowledge whatever that Daniels & Son had refused to receive and had not indorsed the bill of lading, and did not know that Daniels had not authorized appellee to take possession of the goods.

It is claimed that sixteen instructions given for appellee,

numbered 1, 2, 3, 4, 6, 7, 8, 9, 10, 12, 13, 14, 16, 17, 18 and 19, are erroneous. It is unnecessary to set out these instructions, and seems sufficient to say that they are all erroneous, except the 4th, 16th and 17th, which in our opinion are proper instructions under the evidence in this record. The 1st, 2nd, 3rd, 7th, 9th, 10th, 12th, 18th and 19th were improperly given, because there is no sufficient evidence in the record on which to base them. The 6th instruction is erroneous in that it leaves the jury to determine whether the possession of the property in question was *rightfully* in the appellee at the time the suit was begun, without instructing them as to what was meant by the use of the word *rightfully*, whether the possession of appellee was rightful as against Daniels & Son, the railroad company, or as against appellant. The 8th instruction states an abstract proposition of law as to estoppel, which, even if good, has no application to this case, and therefore should not have been given. The 13th instruction states an abstract proposition of law, and was calculated to mislead the jury, as it is based upon the transfer of a bill of lading, whereas no bill of lading in this case was transferred. The 14th instruction is, we think, misleading, in that it tells the jury that a debtor, in failing circumstances, has a right to prefer one creditor to another, and to pay one creditor with goods obtained on credit from another. While there is some evidence in the record in this regard, there is also evidence that Daniels & Son after their failure tried to avoid paying appellee with goods they purchased from appellant; hence we think the instruction was calculated to mislead.

It is claimed by appellee that appellant cannot complain of these instructions, because the instructions given on its request contain the same faults. No attention is called to any specific instructions of appellant which are claimed to have the same errors, and we are unable to find that the claim is well founded.

A letter written to appellee by the attorney of Daniels & Son's assignee on May 16, 1901, some fifteen months after the transactions which resulted in this suit, was ad-

mitted in evidence on behalf of appellee, against the objection and exception of appellant. This we think was clear error, and calculated to prejudice appellant, by reason of the claim therein made by the assignee upon appellee for payment by him for the goods here in question.

Other claims made by appellant that the court erred in rulings upon evidence we think are not tenable and need no specific mention.

For the errors enumerated, the judgment of the Circuit Court is reversed and the cause remanded.

*Reversèd and remanded.*