## Delta Bag Company, Appellant, v. William H. Kearns, Appellee.

### Gen. No. 15,539.

1. RES JUDICATA—*effect of decision of Appellate Court upon appeal.* A decision of the Appellate Court on one appeal becomes the law of the case binding alike upon the trial court and the Appellate Court itself upon a subsequent appeal. A change in the personnel of the court does not give the Appellate Court power to change such decision.

2. CORPORATIONS—*what not "exercise of a corporate power."* The mere bringing of a suit in this state is not such an "exercise of a corporate power" within the meaning of the statute as will subject a foreign corporation to penalties for failure to comply with the act regulating their doing business in this state.

3. CORPORATIONS—*burden to establish defense of non-compliance with statute by foreign corporation.* A defense based on the non-compliance of the plaintiff corporation with the foreign corporation statutes of this state is an affirmative one, the burden of proving which is on the defendant asserting it.

4. CORPORATIONS—*what doing business by foreign corporation does not constitute defense.* If it does not appear that a corporation plaintiff did business illegally in this state prior to its bringing suit, its doing business illegally after its institution of such suit does not constitute a defense.

Replevin. Appeal from the Circuit Court of Cook county; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in this court at the March term, 1909. Reversed and judgment here. Opinion filed March 16, 1911. Rehearing denied March 30, 1911.

HELMER, MOULTON & WHITMAN, for appellant.

WILLIAM A. DOYLE, for appellee; JOSEPH J. THOMPSON, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

For a statement of the facts of this case we refer to the opinion of this court when the cause was pre-

viously before it.  It is to be found in Delta Bag Company v. Kearns, 112 Ill. App. 269.

We shall not discuss the numerous questions raised and argued by the parties in the present appeal so far as they were passed on in that opinion, and by the decision of that appeal.  That decision and the propositions concerning the law as applied to the facts then before the court, stated in that opinion, are the law of this case as well for this court as they were for the court below.  *In re* Maher Estate, 204 Ill. 25; Mariner v. Ingraham, 230 Ill. 130; Ruprecht v. Henrici, 127 Ill. App. 350; Landt v. McCullough, 130 Ill. App. 515; Wilson v. Carlinville Bank, 87 Ill. App. 364; Johnson v. Von Kettler, 84 Ill. 315.

We have not the right, notwithstanding the change in the personnel of the court, to disregard them.  Garrett v. Peirce, 84 Ill. App. 31.  Nor if we had the power should we have the inclination.  *Interest reipublicae ut sit finis litium.*

But so far as another case was made by new or different evidence produced at the later trial below, we are at liberty to review the conclusions reached.  Penn Plate Glass Co. v. Rice Co., 216 Ill. 567.  With the exception, however, of evidence which it is claimed by appellee proved the existence of facts depriving the plaintiff of standing in and the aid of the courts of Illinois in prosecuting its claim,—introduced under two additional pleas filed after the remandment of the cause by this court to the Circuit Court, (which pleas and the evidence introduced under them we will hereinafter consider)—and three pieces of documentary evidence introduced at the last trial by the defendant as bearing on the matters involved in the former opinion of the court, there is practically nothing in the record now before the court not before it in the former appeal.  With these exceptions indeed the cause was tried the second time on the record previously made, which was re-read to the trial judge, to whom the case was submitted without a jury.

Delta Bag Co. v. Kearns, 160 Ill. App. 93.

To complete the statement of the case contained in the opinion in the 112 Ill. Appellate we will note herein the character and contents of the documents alluded to. The first in order of time is the following letter:

"NEW YORK, Feby. 10, 1900.

MESSRS. J. P. KEARNS & Co.,
    Chicago, Ill.

DEAR SIRS:—We are very sorry to announce that we were obliged to make an assignment on Feby. 9th. On Feby. 7th we shipped from New Orleans 24 Bales 40 inch 8 oz. Calcutta Burlaps via. Ill. Cent. R. R. to Chicago intending same to fill your order. They were shipped by G. E. Daniels & Son to Chicago our own order. We had intended to send you the Bill Lading properly endorsed with bill for goods, but did not receive same from R. R. Co. up to the hour of our assignment. The assignee took possession on the 9th and this morning rec'd Bill Lading, which he now holds. As he does not understand this transaction and will not deliver up Bill Lading and may try to get the goods, we advise you to replevin and take possession at once. As soon as you get the goods wire us and we will get assignee to send you Bill Lading. The assignee's name is Alex Melhado, 99 Nassau St.

We enclose bill, balance of which you can remit to assignee.

                    Yours truly,
                        G. E. DANIELS & SON."

The second document was a telegram on a blank of the Western Union Telegraph Co., reading as follows:

"BROOKLYN, N. Y., Feb. 12.

J. P. KEARNS & Co.,
    Chicago.

Shipped New Orleans seventh, were advised that route. Try other lines rail from New Orleans.

                    W. H. DANIELS."

The letter Mr. Kearns testified he received "in the due course of mail," "probably on the 12th" of February, 1900, (the word December in record, page 218, abst. p. 62, evidently being a clerical error for February). The telegram he received the day it was dated, February 12th.

It appeared also in the evidence at the second trial that after receiving the letter of February 10, 1900, Kearns wired Daniels & Son, asking where the goods were and what road they were coming by. The telegram of February 12th from W. H. Daniels was in answer to that inquiry. Then Kearns wired Daniels asking the car number and how many bales in the car, and received the following telegram, which was read into the record as the third of the documents alluded to:

"22 bales, marked Ralli number 470 and 2 bales marked Diamond G., Illinois Central.

W. H. DANIELS."

These documents seem to have been offered in evidence at the second trial as tending to supply that which the opinion of this court in the former appeal says was at least necessary to pass the title of the goods in question to Kearns, namely, an order upon the railroad company from Daniels & Son for their delivery.

Thus, at the second trial the defendant Kearns was asked by the counsel for plaintiff in cross-examination:

"Q. You never had any order from Daniels & Son to take these goods, did you? A. I considered that letter an order. He told me where they were and how they were shipped.

Q. * * * Anything else * * *? A. There is telegrams. I wired and asked the car number and how many bales in the car so I could trace it over the railroad.

Q. These telegrams that have been offered in evidence? A. Yes, sir.

Q. (By counsel for defendant.) And the invoice? A. I had the invoice of the goods there at the time I wired him, the invoice for 24 bales."

To the same purport is the argument of defendant, who says of the telegrams of February 12th and 13th. and the letter of February 10, 1900, "They were not

in evidence at the first trial. They certainly meet Judge Windes' suggestion relative to an order.'' We do not think this letter and these telegrams, change in favor of the appellee the case presented to this court before. The court had then before it in the record the invoice or ''bill,'' which was dated February 7th, and which we are very strongly of the belief was enclosed in the letter of February 10th. Mr. Kearns testified on both trials that he received the bill or ''invoice,'' as he terms it, on the 9th, but as Mr. Justice Windes remarked in his opinion, he is probably mistaken as to the date of its receipt. This court thinks it still clearer after the evidence at the second trial than before that it did not reach the defendant until the 12th. It was sent as an enclosure in the letter of the 10th, written after the assignment of Daniels & Son had been made. But when the letter or bill was sent is really immaterial. The letter and telegrams introduced for the first time in evidence at the second trial add nothing to the correspondence and bill which were before this court in No. 11171, to show that the title to the burlaps had so passed on the attempted resale by Daniels & Son as to cut off the right of stoppage *in transitu* by the Delta Bag Company. This is the only thing on this branch of the case for us to decide. We therefore still hold that when this suit in replevin was begun the right of possession of the goods replevied was in the plaintiff.

This leaves for our decision only the questions, strenuously contested in this case, whether the plaintiff corporation at the time of beginning this suit could demand the aid of the courts of Illinois to enforce its rights of property against a tort-feasor, and if the answer to this be affirmative, whether it could maintain its suit at the time of the second trial in the face of the evidence adduced as to its subsequent transactions in Illinois unauthorized by the State authority.

The basis of the claim that a negative answer should

be given to these questions is the legislation of Illinois in relation to foreign corporations. But for such legislation the courts would of course be open in all matters to the plaintiff, a Georgia corporation, as fully as to any natural person residing in that state. Three successive statutes, the terms and dates of which are material in this controversy, have abridged this right.

The first of these material statutes was approved May 26, 1897, and went into effect July 1, 1897. It provides that "Every corporation for pecuniary profit formed in any other state, territory or country, before it shall be authorized or permitted to transact business in this state or to continue business therein, if already established," shall comply with certain conditions named in its first and second sections. They are substantially to have a public office in the state, to file articles of incorporation with the Secretary of State, and to pay certain taxes and fees. There are certain excepting provisos in the second section, one of which is: *"That the provisions of this Act are not intended to and shall not apply to drummers or traveling salesmen soliciting business in this State for foreign corporations which are entirely non-resident."*

The third section of the Act provides that any foreign corporation neglecting or failing to comply with the conditions of the law "shall be subject to a fine of not less than $1,000 to be recovered before any court of competent jurisdiction," and then proceeds—"In addition to which penalty on and after the going into effect of this Act, no foreign corporation as above defined which shall fail to comply with this Act can maintain any suit or action, either legal or equitable, in any of the courts of this state upon any demand, whether arising out of contract or tort; *Provided that the provisions of this section shall not apply to railroad and telegraph companies which have heretofore built their line into or through this state nor to drummers or traveling salesmen soliciting business in this State for foreign corporations which are entirely non-resident."*

By an Act approved April 22, 1899, which went into effect July 1, 1899, the Act of May 26, 1897, was substantially re-enacted, adding another condition to the requirements by striking out from the second and third sections the provisos above set forth and underlined.

By an Act entitled "An Act to regulate the admission of foreign corporations for profit to do business in the State of Illinois," approved May 18, 1905, the substance of the former Acts was again revised, but practically re-enacted with some changes and additions. Further obligations were imposed on foreign corporations by the law, and the language of the first section of the new Act is, "That before any foreign corporation for profit shall be permitted or allowed to transact any business *or exercise any of its corporate powers in the State of Illinois* other than insurance companies, building and loan companies and surety companies, they shall be required to comply with the provisions of this Act as well as all other regulations prescribed herein, as well as all other regulations, limitations and restrictions applying to corporations of like character organized under the laws of this state."

The sixth section of the new Act re-enacts the penalty clauses of the former Acts with some change, and makes it read as follows:

"Every foreign corporation amenable to the provisions of this Act, which shall neglect or fail to comply with any of the provisions of the same as herein provided, shall be subject to a penalty of not less than one thousand dollars ($1000) nor exceeding ten thousand ($10,000) dollars, to be recovered before any court of competent jurisdiction, and it is hereby made the duty of the Secretary of State, as he may be advised or may ascertain that any corporation is doing business in contravention of this Act, to report such fact to the Attorney General of this State, and it shall be his duty and the duty of the State's Attorney of the proper County to bring such actions at law as shall

be necessary for the recovery of the penalties imposed hereby, *and in addition to such penalty if after this Act shall take effect, any foreign corporation shall fail to comply herewith, no suit may be maintained either at law or in equity upon any claim, legal or equitable, whether arising out of contract or tort, in any court in this State.*"

It is contended by the appellee that "the fair meaning" of this last statute (in force July 1, 1905) "would make it retroactive." The appellant, citing Richardson v. U. S. Mortgage & Trust Co., 194 Ill. 259, contests this, and insists that the Act is not retroactive and cannot affect the cause at bar, which was begun in 1900.

It is not necessary for us to pass on this point, for the only material difference in the statutes affecting this case is the addition to the actions rendered unallowable and illegitimate by a non-complying corporation by the first section of the Act,—of the "exercise of any of its corporate powers."

When this case was tried the last time in the Circuit Court, the Supreme Court had not decided whether it was an "exercise of a corporate power" to bring a suit. Subsequently in Alpena Cement Co. v. Jenkins Co., 244 Ill. 354, and in Simpson Fruit Co. v. Railway Co., 245 Ill. 596, it did decide that it was not, and therefore in effect that it was only non-complying companies "transacting business" (or at least attempting to exercise some power beyond bringing a suit) which were subject to the penalties provided for by each of the Acts.

It is admitted that the appellant in this case never complied with the conditions required by either Act in order to allow it to transact business in this State, but the question of whether it did do business in this state within the meaning of the Acts, either before or after the bringing of this suit, is in controversy.

The contentions of the appellant in this regard are: *First,* that a defense based on the non-compliance of

a plaintiff corporation with these "foreign corporation" statutes is an affirmative one, the burden of proving which is on the defendant asserting it. With this proposition we agree.

*Secondly,* that there was no evidence offered in this cause of the transaction of business in Illinois by the plaintiff corporation, except that its traveling salesmen in isolated cases solicited in this state, by sample, contracts for the sale of goods to be manufactured without this state and there delivered, and took orders in this state from residents herein to be sent to the home office without the state, to be there accepted or refused; and that this kind of business is not the doing or transaction of business forbidden by the Illinois statutes.

*Thirdly,* it is contended that if the statutes are to be given such a construction as would make them forbid transactions like these, they would be unconstitutional as an interference with interstate commerce entirely within Federal jurisdiction.

In our view this case does not call on us for a decisive opinion upon either the second or third of these contentions.

But for our purpose we assume as to the second that it is unfounded as made, and that the evidence in the cause does show that through traveling salesmen, one of whom was the treasurer of the plaintiff corporation, that corporation did make sales and thus "transact business" through such salesmen in Illinois both before and after this suit was brought.

And we also, for the purpose of eliminating matters on which we do not find it necessary to pass, assume that in striking out in the Act of 1899 the exception in the Act of 1897 in favor of "drummers or traveling salesmen soliciting business in this state for foreign corporations which are entirely non-resident," the Legislature so acted, not, as appellant argues and as the Appellate Court for the Second District held, be-

cause that clause was unnecessary in order to protect such transactions, but because it intended no longer to protect or allow them, but to include them within the prohibition.

But these assumptions leave the matter thus: Up to July 1, 1899, all business transactions of the nature of those in which alone the plaintiff corporation indulged in Illinois were permissible and legitimate under the excepting proviso, while after July 1, 1899, they were not.

It is our opinion, formed after a careful consideration of the record, that there is no evidence proving, or even tending in any substantial manner to prove, that any such transactions took place between July 1, 1899, when the law of 1899 first went into effect, and February 26, 1900, when this suit was begun.

It is contended generally by the appellee that there is such evidence. His counsel say in their argument that it was proven by the company's own treasurer "this company had been doing business in Illinois *continuously* for ten or twelve years before this suit was begun and continued to do business after it was begun."

But this is not borne out by Mr. Elsas' testimony, which we have read carefully from the record. There is undoubtedly evidence tending to show that through traveling non-resident salesmen some such business was done by the corporation *after* this suit was begun, and some so done at *some* time *before* this suit was begun, but none that there was any so done between July 1, 1899, and February, 1900.

Unless, therefore, we are prepared to hold that its transaction of business in this state, contrary to the provisions of the Acts of 1899 and 1905, after the suit was brought, justified the trial judge in refusing to the plaintiff corporation the aid of an Illinois court to "maintain" its suit to a conclusion when once it was begun, we must reverse this judgment.

We are not so prepared to hold.   Questions of pleading are involved at the outset.   A plea of *"puis darrein continuance"* is necessary in any event, before matters arising since the beginning of the suit and first joinder of issue can be urged in defense.   Neither of the pleas filed by the defendant on June 11, 1907, under which alone this affirmative defense is made, is framed as a plea *puis darrein.*   A plea *puis darrein continuance* (before July 1, 1907) waived all other prior made defenses and must be "framed with great strictness."   Mount v. Scholes, 120 Ill. 394.

Like the plea discussed in that case, these filed June 11, 1907, in this, have "none of the distinctive features of such pleas, nor have they been pleaded or treated by the court or counsel as such."

The first of these two pleas does not in any manner set up the transaction of any business in the State of Illinois by the plaintiff corporation at any time, and is, in our opinion, plainly demurrable; but the demurrer thereto was overruled and the plaintiff did not stand by its demurrer, but replied.

The replication does not meet the plea, but this, in view of the subsequent course of the pleadings and the facts and law of the case, may be considered immaterial.

The second plea does assert, among other things, that the plaintiff corporation did transact business within the state of Illinois "since July 1, 1899."   To this plea the plaintiff also demurred both generally and specially, among the special causes of demurrer pointing out that the plea does not state whether the alleged transaction of business by the plaintiff corporation was before or after the beginning of the suit, and that if the intention was to allege said transactions since the beginning of the suit and joinder of issue, it could only be in abatement and could only be by plea *puis darrein continuance.*   We think the contentions of this demurrer were well taken, and that it also should have been sustained.

It was, however, overruled, and the plaintiff replied double (concluding each replication to the country), denying that "since July 1, 1899, and the date of the institution of the suit it transacted any business," etc., "within the state of Illinois." The replications did not meet the issue and were inartificial and irregular in form suggesting indeed that there must be clerical errors in them.

The defendant demurred generally to them, but for some reason not apparent in the record the cause proceeded to trial without any adjudication or apparent hearing on the demurrers.

Under the rules of pleading the demurrer to the replications might perhaps be carried back to the pleas again, for we think the pleas insufficient and bad in law,—a conclusion differing from that of the learned trial judge, who by refusing the plaintiff's 43rd Proposition of Law, namely, that "Defendant's additional pleas filed herein on the 11th day of June, 1907, set forth no defense in bar of plaintiff's cause of action," repeated the error involved in his decision on the demurrer to them.

But passing all questions of pleading or technical procedure, we hold, on the substantial merits of the real question involved in this record, on the assumptions that we have hereinbefore set forth, that there is no power in our trial courts, in a case brought by a foreign corporation, not on a forbidden act or for a tort having relation to a forbidden act, but on a matter entirely unconnected with the transaction of any business within this state, to inflict on the plaintiff for infractions of the "Foreign Corporation Act," pending the suit, the punishment for such infraction provided by the Act as an additional penalty to the fine to be enforced by criminal proceedings.

Attempted contracts prohibited by the opening sections of the Act are void because illegal, and afford no ground or basis for an action to enforce them, as this court and the Supreme Court decided in The

United Lead Company v. The Reedy Elevator Co., 124 Ill. App. 174, and 222 Ill. 199. So, too, in an action of tort, or on a contract not connected with the illegal act, it may well be that a defense in the nature of a pleading in abatement might be properly upheld by the courts of Illinois, if it should be clearly proven that before the suit was begun the plaintiff corporation had, by an infraction of the law, forfeited its right to bring a suit of any kind.

But it is another thing which we are called on to do here by appellee, namely, to say that a civil court may, and on demand must, in any suit, interject a trial of the guilt or innocence of a plaintiff corporation under a penal statute (one, therefore, to be strictly construed) in respect to the infraction of that statute after the suit in question was begun, and if such court finds it guilty, outlaw it in the pending case. It seems to us, notwithstanding the ambiguity which may seem latent in the words "maintain any suit in tort or contract," impossible that the Legislature could have intended this, and we therefore hold that the courts have not the indicated duty or power. We hold that the word "maintain" in the statute must be considered as practically synonomous with "bring" or "begin."

Our conclusions, therefore, force us to reverse the judgment in this case and give judgment here for the plaintiff below (the appellant here) against the defendant below (the appellee here) for the value of the goods in Chicago at the time of bringing this suit, with interest thereon at five per cent from the date of the demand on the defendant on the writ of replevin and of its refusal (February 26, 1900), to the day of this judgment. That value appears from the evidence $2,028. Interest at five per cent from February 26, 1900, to March 16, 1911, is $1,120.47. The judgment therefore will be for $3,148.47.

*Reversed and judgment here.*