Angelina County Lumber Company, Plaintiff in Error,
v. Michigan Central Railroad Company and Manu-
facturers Finance Company, Defendants in Error.

Gen. No. 32,793.

84

Opinion filed February 27, 1929. Rehearing denied March 19, 1929.

BOYLE & MOTT, for plaintiff in error.

WINSTON, STRAWN & SHAW and TELLER, LEVIT, SILVERTRUST & LEVI, for defendants in error.

MR. JUSTICE WILSON delivered the opinion of the court.

The Angelina County Lumber Company, a corporation, plaintiff, brought its action in replevin in the municipal court to recover possession of two carloads of lumber located in the Kensington yards of the Michigan Central Railroad Company in Chicago, charging that the railroad company wrongfully took and now detains the said goods and chattels. The Michigan Central Railroad Company answered and admitted that it had the two cars of lumber at its Kensington yards and stated further that it had refused to accept the lumber as consigned and had afterwards tried to receive disposition orders from the parties interested but had been unable to do so.

Defendant further states in its affidavit of defense that on April 19, 1926, it received a communication from the Manufacturers Finance Company, defendant herein, in which it was stated that the said Manufacturers Finance Company had purchased invoices covering lumber which is the subject matter of the suit and advised the Michigan Central Railroad Company to that effect. The Manufacturers Finance Company, a corporation, defendant herein, answered and stated

that on January 12, 1926, at Cleveland, Ohio, it received a written assignment from W. R. Hickman Lumber Company of all sums due from the Michigan Central Railroad Company to the W. R. Hickman Lumber Company, by virtue of the sale of the two carloads of lumber in question by the W. R. Hickman Lumber Company to the Michigan Central Railroad Company.

The abstract filed herein on behalf of the plaintiff in error fails to contain any of the documents or records relied upon by the plaintiff in error and we have been compelled to search the record in order to arrive at a decision in the case. This court searches the record on a writ of error, but it is better practice to aid and assist the court in its search by including necessary exhibits in full in the abstract, or so much thereof as is necessary for a full consideration of the case. The additional abstract of record filed herein by the defendant, Manufacturers Finance Company, is devoid of an index, which is contrary to the rule of this court and it has, therefore, been of little avail to this court in its effort to arrive at a correct conclusion.

The facts, however, show that the W. R. Hickman Lumber Company of Cleveland, Ohio, communicated with the plaintiff, whose plant was located at Keltys, Texas, asking quotations on lumber of a certain kind and classification, resulting in a sale by the Angelina County Lumber Company to the W. R. Hickman Lumber Company of two carloads of lumber at terms of 80 per cent less 2 per cent upon receipt of invoice and balance on arrival and inspection.

December 30, 1925, car No. 23592 was received by the Angelina & Neches River Railroad Company, consigned to the Michigan Central Railroad Company, in care of B. W. Griffith, storekeeper, Junction Yards, West Detroit, Michigan.

December 31, 1925, car No. 86760 was received by the same carrier consigned to the Michigan Central Railroad Company in care of L. M. Stark, Storekeeper,

Marshall, Michigan. There appears to be some confusion in the record as to the number of this last car—it is sometimes referred to as car No. 86760 and at times as No. 48283—but no point is made in the record as to this variance and, from the facts, it undoubtedly appears that two cars of lumber consigned by the plaintiff were, ultimately, received by the Michigan Central Railroad Company and, at the time of the bringing of the suit, were stored in the Kensington yards of that railroad company, and have been considered as the correct cars of lumber by all the parties concerned. These cars arrived at Kensington, in care of the Michigan Central Railroad Company, as carrier, on or about January 20, 1926, and were inspected and rejected.

February 20, 1926, plaintiff drew a sight draft on the W. R. Hickman Lumber Company of Cleveland for the amount of the price quoted on said cars, which was returned unpaid. January 12, 1926, the W. R. Hickman Lumber Company assigned a list of accounts to the Manufacturers Finance Company and included in this list of accounts were two accounts against the Michigan Central Railroad Company for $1,340 for goods sold by the W. R. Hickman Lumber Company to that railroad. This assignment stated that in consideration of $5 and other valuable consideration, the W. R. Hickman Lumber Company sells, assigns and sets over to the Manufacturers Finance Company, all its right, title and interest in and to the open accounts and contracts named therein, represented by invoices and shipping documents, aggregating $4,050, including all moneys due and to become due upon the same, and absolute title to the merchandise represented thereby including all merchandise returned, rejected or reconsigned, together with the right of stoppage in transit. It is uncontradicted that a valuable consideration was paid for the assignment of these accounts. Notice of this assignment was sent to the Michigan Central Railroad Company by the Manufacturers Finance Com-

pany and received by the Michigan Central Railroad Company on April 19, 1926, but no notice of the assignment appears to have been sent to the plaintiff and the first notice received by the plaintiff was after the filing of this suit in replevin.

The Manufacturers Finance Company billed W. R. Hickman Lumber Company for these accounts assigned to them from time to time during January, February and March and received part payment on account. This fact appears in the testimony of Elmer V. Hammer, adjustment manager of the Manufacturers Finance Company, contained in his deposition and made a part of the record herein.

The W. R. Hickman Lumber Company went into bankruptcy the latter part of April, 1926, and the plaintiff received notice of said bankruptcy proceedings on or about May 1, and, thereupon, paid the freight due upon the said cars of lumber and demanded possession, which was refused.

E. L. Kurth, a witness on behalf of the plaintiff, testified that he was the vice president and general manager of the plaintiff company and that the plaintiff had never authorized nor consented to the diversion of the lumber from its original destination in Michigan to the Kensington yards at Chicago. It appears from the facts that the W. R. Hickman Lumber Company of Cleveland, after the purchase of the lumber, resold it to the Michigan Central Railroad Company subject to inspection and that the Michigan Central Railroad Company, defendant herein, had received it from a connecting carrier and conveyed it to its Kensington yards at Chicago, Illinois, as carrier, but that after inspection it rejected the lumber and never held it other than as a carrier until it was unloaded for the purpose of saving demurrage charges. It was never received by the W. R. Hickman Lumber Company nor accepted by that company, nor was it ever received or accepted by the Michigan Central Railroad Company, as purchaser,

from the W. R. Hickman Lumber Company, and, so far as the record discloses, was still in transit and in the possession of the Michigan Central Railroad Company, as carrier.

In our opinion it makes no difference whether the Michigan Central Railroad Company held the lumber as carrier or as bailee, as there had never been a delivery to any one and the right to repossess itself of the goods was still in the vendor, plaintiff in this 'action, unless that right may have been defeated by the assignment made by the W. R. Hickman Lumber Company to the Manufacturers Finance Company, January 12, 1926. The Michigan Central Railroad Company claims no interest in the property and the question for consideration is as to which has the superior right, vendor or assignee.

The original bill of lading in this case is not in evidence, so that this court has not the opportunity of passing upon the question as to whether or not it was a negotiable or non-negotiable instrument. It does not appear to be in the possession of the assignee and, upon the oral argument of the cause, counsel for the assignee took the position that they relied upon their assignment and not upon the bill of lading. Counsel for both the vendor and the assignee have cited and relied upon the Uniform Sales Act, Cahill's St. ch. 121a, ¶¶ 4–81, in force in the State of Illinois. The contract of purchase, however, was made in Texas and the Uniform Sales Act of this State has no application. At the time of the making of the contract for the delivery of lumber, between the W. R. Hickman Lumber Company and the Angelina County Lumber Company, there was no Uniform Sales Act in Texas, and the conditions surrounding the sale necessarily are governed by the common law and not by any statutory enactment. The Manufacturers Finance Company was engaged in the business of buying and selling accounts and not in the business of dealing in lumber and commodities.

After the assignment of January 12, 1926, the W. R. Hickman Lumber Company dealt with the Michigan Central Railroad Company and the Angelina County Lumber Company in regard to the disposition of the lumber at the Kensington yards, continuously up to the time of the filing of the replevin suit. The assignee at no time took any steps to obtain possession of the lumber, nor did it pay the freight, nor communicate with the vendor in regard to the disposition of the property and did nothing other than to advise the Michigan Central Railroad Company on April 19, 1926, of the fact that it had an assignment from the W. R. Hickman Lumber Company and that the account was payable to it as assignee. While the assignment contains words to the effect that the title to the merchandise represented by the invoices and shipping documents was conveyed to the assignee, a careful reading of the instrument, together with the actions of the parties, would indicate that the assignment was an assignment of the account and not a conveyance of the property. In the construction of an assignment the main object is to ascertain the intention of the parties and this intention is derived, not only from the instrument, but from surrounding circumstances. 5 Corpus Juris, p. 943. Moreover, the W. R. Hickman Lumber Company could not have conveyed any greater title or interest in and to the property by assignment, greater than the W. R. Hickman Lumber Company itself had, in the subject of the assignment. *Delta Bag Co. v. Kearns*, 112 Ill. App. 269; 5 Corpus Juris, p. 963.

The assignee took subject to the obligations imposed upon the assignor and subject to the same defenses that the vendor would have against the assignor. *Pioneer Loan & Land Co. v. Cowden*, 128 Minn. 307; 2 Ruling Case Law, p. 626.

The plaintiff's right to recover, if it has such a right, appears to be based upon the right of stoppage *in transitu*, and the further fact that the transaction hav-

ing been a sale for cash on delivery it had a lien upon the property sold until this condition was met and the money paid for the goods. The right of stoppage *in transitu* was originally an equitable right but adopted by the comman law as a common-law right because of the apparent injustice to a seller whose goods would be lost before arrival at their destination in the event of the insolvency of the purchaser. This right is based upon the fundamental doctrine allowing rescission and restitution where there is actual or prospective failure of consideration. This right may be defeated by the issuance of a bill of lading coming into the hands of an innocent purchaser. In the case at bar, however, the assignee has not produced such an instrument nor, as stated in the oral argument, is it relying upon any original negotiable bill of lading. The normal termination of the transit is, under usual circumstances, the arrival of the goods at their destination and the delivery to the buyer or his representative. The mere arrival, however, of the goods at a fixed terminus does not necessarily end the transit, for the goods may well be in the possession of the carrier or of an intermediate bailee. The delivery of the goods in this case to the Michigan Central Railroad Company, consigned to itself, through its storekeeper, at the points of destination in Michigan, was not a delivery which would defeat a right of stoppage *in transitu*. The Michigan Central Railroad Company received the goods as carrier and conveyed them to its Kensington yards, whereupon, after inspection, rejected the goods and never accepted them as a purchaser from the W. R. Hickman Lumber Company or anyone else. When the cars were unloaded at Kensington and placed under the control and custody of the Michigan Central Railroad Company's storekeeper at that point, the goods were received by the railroad company as bailee and were legally still in transit and subject to the right of stoppage *in transitu*. Williston on Sales (2nd Ed.), §§ 526, 532.

The plaintiff in this action, moreover, had an additional claim in support of its position, namely, that the sale having been for cash and the condition not complied with, the vendor had a lien upon said goods for the amount of the purchase price and could take the property itself upon failure of the vendor to meet the condition of payment. The old rule appears to be that, where goods were shipped by means of a common carrier to a purchaser and the condition of the sale was payment of cash upon delivery, the title of the goods remained in the vendor until that condition was complied with and payment made. The modern rule, however, appears to be that the title passes to the vendee, subject to the lien of the vendor in the event that payment is not made when the goods are offered for delivery. *Canadian Bank of Commerce v. McCrea,* 106 Ill. 281; Williston on Sales (1st Ed.), § 343. The sale of the lumber in question by the plaintiff to the W. R. Hickman Lumber Company was 80 per cent less 2 per cent on delivery. Not only was this amount never at any time paid by the vendor, but no amount of any kind was ever paid or tendered.

Under the circumstances as we find them from the record in this case, there being no original negotiable bill of lading in the hands of an innocent third party, and the assignment being that of a simple chose in action, namely, an account, we are of the opinion that, under the assignment from the W. R. Hickman Lumber Company, the Manufacturers Finance Company was placed in the position of the assignor and subject to all the rights in and to the lumber that existed in favor of the plaintiff in this action. As to the W. R. Hickman Lumber Company, the assignor, the plaintiff had both the right of stoppage *in transitu* and a lien by reason of the failure to pay the purchase price and was, therefore, entitled to the possession of the lumber in the hands of the Michigan Central Railroad Company, defendant herein, in the replevin action.

For the reasons stated in this opinion the judgment of the municipal court is reversed and judgment here for the plaintiff, finding the right of possession to the lumber in question in the plaintiff at the time of the suing out of the writ of replevin herein, together with judgment for one cent damages and for costs of this proceeding against the defendant, Manufacturers Finance Company.

*Judgment reversed and judgment here for plaintiff with judgment for damages of one cent and for costs against defendant, Manufacturers Finance Company.*

HOLDOM, P. J., and RYNER, J., concur.