THE BANK OF THE STATE OF MISSOURI, Respondent, v. THEODORE BREDOW, Appellant.

1. Where, by virtue of an attachment, a garnishee is summoned who has in his possession notes, bills and evidences of debt belonging to the defendant in the attachment, the garnishee has the right to sue for and collect such notes and bills, until an order is made by the court, or the judge in vacation, requiring such choses in action to be delivered to the sheriff, or a receiver appointed under the statute.

2. When the garnishee sues upon a bill endorsed to him for collection, the fact that the plaintiff has been summoned as garnishee in an attachment against the beneficial owner of the bill, is no defence.

3. The act, approved November 28, 1857, entitled "An Act in relation to certain Bank paper in this State," was a waiver by the state of all forfeitures imposed upon the banks of this state, incurred under the provisions of the act of 1855, p. 287, § 5, for dealing in the paper of the suspended banks of this state prior to the date of said waiver. An answer, therefore, which pleaded the violation of said 5th section of the act of 1855, in relation to illegal banking, in bar of the right of the plaintiff to sue, was properly stricken out on motion.

*Appeal from St. Louis Court of Common Pleas.*

This was a suit upon a bill of exchange drawn by one Pike on defendant in favor of Pike, endorsed by him to the Ohio Life Insurance and Trust Company, and by it endorsed to the plaintiff.

The defendant filed an answer, setting forth that said bill at its maturity belonged to the Ohio Life Insurance and Trust Company, and was endorsed to the plaintiff only for collection ; that, before the commencement of this suit, by virtue of attachments issuing from the St. Louis common pleas against said company, the plaintiff had been summoned as garnishee and had answered that it held said bill for said company ; the answer further stated, that said bill had been attached by the sheriff of St. Louis county as the property of said Ohio Life Insurance and Trust Company, and therefore that plaintiff's right to the bill, and to sue thereon, became, by the laws of this state, vested in such person as might be by said court appointed receiver ; or if no receiver were appointed, then in the said sheriff; and concluded that the plaintiff had no right to sue upon said bill.

The answer further alleged that the plaintiffs, between October 1, 1857, and November 17, 1857, being a corporation created by the laws of this state, did, contrary to the provision of section 5 of the act to prevent illegal banking, &c., (R. C. 1855, p. 287,) pass and receive within this state suspended and non-specie-paying bank notes issued as currency, to-wit, notes issued by the suspended banks of this state ;

whereby plaintiff forfeited its charter, and could no longer sue in its corporate name.

Plaintiff moved to strike out the answer, and the motion was sustained and judgment rendered for the plaintiff. Defendant excepted and appealed.

*S. H. Gardner*, for appellant.

I. At the commencement of this suit, by operation of the statute and the attachment issued, the right to sue and recover had become vested in the sheriff of St. Louis county, who could alone maintain an action upon the bill; and this could be pleaded and proved. (R. C. 1855, p. 244–5; § 28, p. 247; § 36, p. 249; § 38 & 41, p. 250.)

II. So much of the answer as sets up the forfeiture of the charter, by the passing of the notes of non-specie-paying bank notes, was a good defence to the action, as decided in the case of Christian University v. Jordan, 29 Mo. 68; R. C. 1855, p. 287, § 5.

*W. T. Wood* with *C. D. Drake*, for respondent.

I. A party to whom a bill is endorsed for collection may sue in his own name. (Webb et al. v. Morgan et al., 14 Mo. 428; Page et al. v. Lathrop, 20 Mo. 589; 29 Mo. 456; R. C. 1855, p. 320.)

II. The garnishment of plaintiff did not affect its right to sue; it was its duty to collect the money as speedily as possible.

III. The bank act authorizes the banks to deal in the paper of any of the banks of this state. (Act 1857, p. 10, art. 1, § 4.)

DRYDEN, Judge, delivered the opinion of the court.

The question presented in this case for the consideration of the court is, whether the matters set up in the answer, or any of them, constitute a bar to the plaintiff's action. If so, the court erred in striking out the answer, and its judgment

must be reversed; otherwise, its action was proper and its judgment ought to be affirmed.

1. As to the matter of the answer regarding the garnishment of the bank, and the attachment of the bill. Did the service of the garnishment have the effect in law of suspending the right of the bank to sue on the bill, the foundation of the present suit, and to transfer that right to the sheriff, the attaching officer? In support of the affirmative we are referred to sections 22, 28, 36, 38, and 41 of art. 1 of attachment law of 1855. (See R. C. 1855, pp. 244 & '5, 247, 249, and 250.)

The fourth subdivision of the 22d section, which is all that relates to the question under consideration, provides,

" Fourth. When goods and chattels, money, or evidences of debt, are to be attached, the officer shall take the same and keep them in custody, if accessible; and, if not accessible, he shall declare to the person in possession thereof that he attaches the same in his hands, and summon such person as garnishee." The 36th section has relation to the power of the court over the garnishee, and over the property credits and effects of the defendant in the hands of the garnishee, and is as follows: "If it appear that a garnishee, at or after his garnishment, was possessed of any property of the defendant, or was indebted to him, the court, or judge in vacation, may order the delivery of such property, or the payment of the amount owing by the garnishee, to the sheriff, or into court, at such time as the court may direct; or may permit the garnishee to retain the same, upon his executing a bond to the plaintiff," &c. Section 38: "when notes, bills, books of accounts, accounts, or other evidences of debt, are attached, they shall not be subject to be retained upon the execution of a delivery bond, as hereinbefore provided, but shall be delivered to the receiver, who shall proceed with diligence to settle and collect the same; for that purpose he may commence and maintain actions on the same in his own name," &c.

The 41st section provides, that, until a receiver is appointed, the attaching officer shall have all the powers and perform all the duties of a receiver under the statute. Now, under these provisions of the law, at what point of time does the power of the receiver spring up? Not, I submit, until he gets possession of the bill, the subject of the garnishment. The receiver is required to proceed with diligence to collect," &c. ; but when? Not until the bill shall be delivered to "him, and the garnishee is under no obligation, legal or moral, to deliver, until ordered by the court, or the judge in vacation ;" so that there must be an order to deliver, and an actual delivery, before the receiver's power is brought into action. In the present, case it is not averred in the answer that there was ever any order to deliver, or delivery of the bill; the reverse would seem to be true. If, then, neither the sheriff, nor a receiver, could sue, how did the attachment in the interval between the commencement and termination of the suit affect the right of the bank to sue? Was the right suspended for the time? If so, then, upon the facts as stated in the answer, the present defendant was, by a legal contrivance, exempted from responsibility on his acceptance, both to the attaching creditor, and to his own creditor. The law is guilty of no such absurdity ; as has been seen, the power of the receiver to sue originates with the act of taking possession ; until that occurs, the right of the garnishee, (either in his own name, or in that of his principal, the attachment debtor,) remains undiminished. It may be said this view would be an encouragement to a fraudulent or insolvent garnishee to possess himself of the fund which the law, by means of the garnishment, meant to reach; and thus the law defeat its own ends. The answer is, if the attaching creditor is not satisfied with the garnishee's responsibility, the law furnishes him an instant remedy in the order, of the court in term, or of the judge in vacation, upon the garnishee to deliver the attached property. If the creditor will not call forth the exercise of this power for his own protection, the fault is his own, and not that of the law.

2. The remaining defence relied on in this answer is based on the alleged forfeiture of the charter of the bank, by receiving and paying out the notes of non-specie-paying banks, between the 1st of October and 23d of November, 1857, in violation of the provisions of the 5th section of the act to prevent illegal banking, &c. (R. C. 1855, p. 287.)

By the common law, a cause of forfeiture could not be taken advantage of or enforced against a corporation, collaterally or incidentally, as proposed here, but only by a direct proceeding for the purpose against the corporation by *scire facias*, or by an information in the nature of *quo warranto*. (Ang. & Ames on Corp. § 777–8.)

The 9th section, however, of the above recited act, in this respect, changes the common law, and gives a party, sued by a corporation guilty of a violation of the provisions of the act, the right to plead the matter which is the cause of the forfeiture in bar to the suit brought by the corporation. The theory of the defence is, that the plaintiff is dead, and therefore not capable of suing or being sued, of answering or being answered unto. It is a plea grounded on no merit of the defendant, nor in any thing meritorious he has done; and in nothing, more than any other strictly technical defence, does it commend itself to the court. It is, to say the least of it, questionable whether, in its ultimate results, the only benefit the defendant derives from the defence is the delay it occasions. It is provided by statute, in case the corporate existence of any of our banks expires, the corporate property shall pass to trustees, to whom power is given to sue, collect debts, &c., for the benefit of the creditors of the corporation, and others. Although the creditor might discharge himself from responsibility at the suit of the corporation, would he not still be responsible to the trustees? Upon any other interpretation of the law, a wrong and great hardships would be imposed upon innocent and unoffending creditors, and others. It being in its nature a dilatory plea, (although called a plea in bar,) it should meet their disfavor, which always attaches to defences of that character. As remarked

before, the theory of the defence is, that the corporation is dead. That the misconduct charged in the answer was sufficient to produce that result it is not necessary to deny; but, however this may be, it can not be denied that it is competent for the legislature to waive the forfeiture, and give new life to the defunct corporation. This, we hold, the legislature has done for the plaintiff, by the passage of the act entitled, "An act in relation to certain Bank paper of this State," approved November 23, 1857; the 2d section of which provides that, "all penalties, forfeitures, or liabilities, incurred under the provisions of said act (the act concerning illegal banking), in consequence of dealing in the paper of any of the banks of the state, in any manner whatever, be and the same is hereby released without any penalty or forfeiture, as provided by said act." By this then, and other legislation had about the same time, life was restored to the plaintiff, and with it, exemption from all the incidents of a state of death. The answer, in our opinion, did not contain a defence, and it was therefore properly stricken out.

The other judges concurring, the judgment is affirmed.