# THE SUPREME COURT

### OF

# THE STATE OF MISSOURI,

#### JULY TERM, 1863, AT JEFFERSON CITY.

34  119
52a 457
34  119
80s 265

---

THE FARMERS' BANK, Defendant in Error, *v.* ANDREW GARTEN *et al.*, Plaintiffs in Error.

*Banks—Constitution.*—The act of the General Assembly of March 2, 1857, (Sess. Acts 1856–7, p. 14,) creating banks and branch banks, is not in violation of the constitutional provision forbidding the creation of more than ten banks.

*Banks—Forfeiture.*—A debtor sued by one of the banks of this State cannot plead, in bar of the suit, that the bank has suspended payment of its liabilities in specie, and has thereby forfeited its charter by virtue of the provisions of § 9, art. 1, of the act of incorporation. (Sess. Acts 1856–7, p. 17.) Such a forfeiture can only be enforced by the State in a direct proceeding for that purpose.

*Note—Endorser.*—A party endorsing a blank note cannot, as against an endorsee for value without notice, object that the blanks have been filled contrary to the agreement made between the parties.

*Banks—Illegal Banking.*—The banks chartered by this State are not subject to the provisions of the statute against illegal banking (R. C. 1855, p. 286) by passing the notes of the other banks of the State, although they have suspended specie payments. Bates, Judge, dissenting.

*Banks.*—A debtor to a bank cannot plead, as a defence to a suit by the bank, that it has refused to redeem its five-dollar notes in coin; or that it has not kept in its vaults the amount of coin required by its charter. Such viola-

Farmers' Bank v. Garten et al.

tions of the law cannot be inquired into collaterally, but only by some direct proceeding on the part of the State.

*Banks—Interest.* — Merchants' Bank v. Sassee, 33 Mo. 350, affirmed. The banks of this State may, in discounting paper payable out of the county, charge a premium for exchange, without being guilty of usury.

### *Error to Clay Circuit Court.*

*Doniphan* and *Lawson*, for plaintiffs in error.

I. The act chartering the banks with branches made by the General Assembly in said act of 1856–7, p. 14, is unconstitutional as far as the Farmers' Bank and its branches are concerned, as each branch exercises all the powers of a separate bank as far as all banking privileges are concerned. (Acts 1856–7 ; Const. Amend. id. p. 6.)

II. The charters of the banks are forfeited upon their failing and refusing to redeem their issues in gold or silver for ten days after demand. (Acts 1856–7, p. 14; § 9, p. 17.)

III. The banks had no power to protest paper, or do any other act, until revived by acts of March 18, 1861, and act of May 15, 1861, both of which are unconstitutional and void. (Acts 1856–7, p. 6.) The act of 1858–9, p. 16, is in violation of the constitution. (31 Mo. 528.)

IV. The taking of usury, by charging a greater rate of exchange than was reasonable on the bill of exchange, rendered the bill sued upon void, and the respondent is prohibited from collecting the said note. (Acts 1858–9, p. 16, and § 14.)

V. The pleadings admit that the bank took and received a large sum as usury, and that the contract as such was usurious and void. When the original loan is usurious, all the securities are void. (9 Cow. 647 ; 2 Cow. 678–712; 2 Pet. 527; 11 Ohio, 489–98; 8 Ohio, 257; Angell & Ames, § 256 ; 12 Ohio, 544; 13 Ohio, 1 ; 2 Cranch, 167 ; 4 Pet. 168; 9 Mo. 513 ; 10 Mo. 564; 31 Mo. 528; 29 Mo. 68; 26 Barb. 595 ; 7 Wheat. 57; Sto. Eq. § 1232; 13 Pick. —.)

*Ryland & Son, Merryman, Wolff & Burnes*, for defendant in error.

I. For a violation of the charter, the party must resort to a different remedy—*quo warranto;* and cannot set such a violation up in his answer when sued on a bill of exchange or note.

II. Where the power creating the charter has also afterwards released the corporation from any supposed violation or forfeiture, by any act of legislation, there can be no *quo warranto* or other process to enforce the forfeiture.

III. Whenever the corporation acts within its sphere, or within the bounds of the business affairs of its creation, its acts may be illegal, but not void. Usury does not, by any clause in the charter of the bank, render the contract void.

BATES, Judge, delivered the opinion of the court.

This is a suit brought upon a bill of exchange, drawn by Andrew Garten upon Strader, Evans & Co., (and accepted by them) in favor of John Minter; endorsed by Minter to Scraggs, and by Scraggs to the plaintiff. Minter answered. The other defendants made no defence. Upon plaintiff's motion, Minter's answer was stricken out, and judgment rendered against all the defendants. Minter preserved exceptions to the striking out of his answer, and the questions that arise here relate to the validity of that answer; the answer sets up several defences, which will be considered in their order.

The first defence is, that the plaintiff (which is one of the ten banks chartered by the act of 1857) has no legal existence, because that act is unconstitutional in chartering a greater number of banks than ten. This conclusion is arrived at by regarding the branches authorized to be established by the parent banks as themselves banks, within the meaning of that word as employed in the constitution. It is not plain to us that they should be so regarded, and we will not hold an act of the General Assembly void upon the ground that it is in violation of the constitution, unless it plainly appears to be so. We think it unnecessary to attempt any definition of what constitutes a bank, thinking it sufficient

to say, that it is not clear to us that the branches are banks within the meaning of the constitution.

The second defence is, that the plaintiff suspended payment of its notes in specie on the 13th day of November, 1857, and also about the middle of December, 1860 ; at each time, for a longer period than ten days, and that at the time said bill of exchange was protested the bank had been in a state of suspension for more than ten days. The bill was dated 21st January, 1861, and was protested 24th May, 1861. This is not a good defence. The bank act provides, " that upon such suspension of specie payments the charter of the bank shall cease and determine ;" but we hold that such forfeiture cannot be enforced against the bank collaterally, but only by a direct proceeding for the purpose by *scire facias, quo warranto*, or information. (See Bank of the State of Mo. v. Bredow, 31 Mo. 528.)

The third defence is, that he, the defendant Minter, endorsed the bill at the request of Schrader, one of the acceptors, whilst the amount of it was blank, with the agreement that it was to be filled up for about twelve hundred dollars, and also was to have put upon it the prior endorsement of Rice Davenport, and that Schrader filled it up for a larger sum, and also used and disposed of the bill without getting the endorsement of Davenport upon it. This is not a good defence against the endorsee. The defendant having endorsed the bill in blank, has thereby given to the holder the right to fill up the blanks ; and the bill having passed to the plaintiff for value, the defendant cannot deny that the blanks were properly filled.

The fourth defence is, that the bill did not belong to the plaintiff, but to its branch at Liberty, and that both the parent bank and the branch had suspended specie payments for more than twenty days before the protest of the bill. The objections to this defence are stated before in the remarks upon the first and second defences.

The fifth defence is, that, about the 15th day of January, 1861, and on divers other days before and since, the plain-

tiff received and paid out bills of the Western Bank, Union Bank, Bank of St. Louis, and Mechanics' Bank, while the said banks were suspended, and at a depreciated value, contrary to the provisions of the statute against illegal banking, approved December 8, 1855. This defence (though not pleaded with desirable fulness and perspicuity) does, in my opinion, constitute a good defence to the plaintiff's suit.

The act to prevent illegal banking, of December 8, 1855, forbids a corporation to pay or receive "any suspended or non-specie paying bank note ;" and the ninth section provides, that any violation or evasion of the act may be pleaded in bar to any suit brought by such corporation. This gives to the defendant a special authority to plead such acts in defence of a private suit against him, and relieves him from the operations of the general principle stated in reference to the second defence, that a violation and forfeiture of the plaintiff's charter cannot be inquired into collaterally. In the case of the Bank of the State of Missouri v. Bredow, 31 Mo. 528, it was so held; but in that case the violation of that act occurred prior to the passage of the act of November 23, 1857, which released the plaintiff from any penalty or forfeiture incurred under the provisions of the act concerning illegal banking. In this case, the illegal acts are charged by the answer to have taken place in January, 1861, since which time there has been no act of the Legislature to release the plaintiff from the penalties of violating the act of 1855. The act concerning illegal banking was designed to prevent the circulation of small bank notes, and of the notes of banks which had suspended specie payments; and the privilege given to defendants, in suits brought by corporations, to plead, in bar of the actions, violations of the act, was for the purpose of punishing the corporations, and thus deterring them from violating the act, and was not for the purpose of benefiting the defendants who might be indebted to corporations. The General Assembly had, therefore, power to release the corporations from such penalties, and as to some corporations, did so by the act of November 23,

1857, as held in the case of the Bank of the State of Mo. v. Bredow; but as no such release appears as to this case, the defence pleaded was a valid one, and should not have been stricken out. The other judges, however, are of opinion, that the statute against illegal banking of December 8, 1855, has no application to the receiving and paying out the bills of banks of this State, while said banks were suspended upon the same grounds stated in the opinion of the court, in the case of the North Missouri Railroad Company v. Winkler, 33 Mo. 354.

The sixth defence is, that the plaintiff refused to redeem its five-dollar bills in coin; and the seventh is, that the plaintiff had not in its vaults the amount of coin required by law. These violations of law do not constitute defences to this action, for the reasons stated in reference to the second defence.

The eighth defence is, that the bill sued upon is usurious and void, because the bank received a greater amount of interest than was authorized by its charter; but the allegations are so indefinite and indistinct that it does not appear that the excessive deduction made by the plaintiff from the amount stated in the bill was so made and retained by the plaintiff as excessive and usurious interest.

The ninth defence is, that the bank charged (in discounting the bill) the interest authorized by law, and (to cover up usurious contract) a further sum as exchange. This trick of the bank is authorized by law. (See the case of Merchants' Bank v. Sassee, 33 Mo. 350.) The bank is authorized to charge a *reasonable* premium for exchange. The *reasonableness* of the premium charged in this instance is not put in issue distinctly, but only inferentially.

The bill was discounted before the passage of the act for the relief of the banks, approved March 18, 1861, which permits the banks to charge eight per cent. discount, (*including all exchange and re-exchange.*)

The answer contained no good defence, and the court, therefore, did not err in striking it out.

Judgment affirmed. Judges Bay and Dryden concur in affirming the judgment.