(No. 27931.—

E. J. RUWALDT *et al.,* Appellees, *vs.* W. C. MCBRIDE, INC., *et al.,* Appellants.

*Opinion filed November 22, 1944.*

Fulton, C.J., dissenting.

Wham & Wham, of Centralia, Guy E. McGaughey, of Lawrenceville, Henry I. Green, and Oris Barth, both of Urbana, for appellants.

Maurice De Witt, of Mount Vernon, and Craig & Craig, of Mattoon, for appellees.

Mr. Justice Gunn delivered the opinion of the court:

E. J. Ruwaldt and Kenneth M. Bayer filed their amended complaint in equity in the circuit court of Jefferson county to restrain appellants, W. C. McBride, Inc., Theresa Hoppa, Richard Hoppa, Lillian Hoppa, Edward Hoppa, Chester Hoppa, Martha Punicki and Marion Hardyman and the respective spouses of those appellants who

were married, from operating under a certain oil lease purporting to include the same land as contained in a lease held by appellees, and to confirm an oil lease on said premises made and delivered to appellees prior to the one under which W. C. BcBride, Inc., was attempting to drill. Answers were filed denying the validity of appellees' lease, and a counterclaim was filed asserting W. C. McBride, Inc., had the only valid oil and gas lease. After said issues had been so formed, evidence was taken and the issues decided in favor of appellees upon all points. Appeal is taken directly to this court because a freehold is involved. *Cravens v. Hubble,* 375 Ill. 51.

John Hoppa died April 24, 1936, owning seventy-one acres of land in Jefferson county. He left surviving him a widow, Theresa Hoppa, and six children, one, Richard, a minor, living with his mother in Jefferson county, and five others who were living in Chicago. December 4, 1940, the widow and her minor son, Richard, executed an oil and gas lease to appellees on said seventy-one 'acres, being in standard form, for five years, or as long as oil and gas was produced in paying quantities, and providing for a delay-payment privilege of one dollar per acre per year in case a well was not drilled within one year. This instrument was filed for record December 7, 1940. March 18, 1941, the remaining five Hoppa heirs, together with the respective spouses of those who were married, signed and acknowledged the same lease in Chicago, after which it was again recorded in Jefferson county. The mother and all of the heirs executed a lease of the premises to W. C. McBride, Inc., July 24, 1941.

The lease to appellees, when signed and executed by the widow and minor son, included as grantors the names of all of the other Hoppa heirs, and referred to them collectively as "lessor (whether one or more.)" March 14, 1941, there was written in longhand on the face of the lease beneath the description the following: "If no well

be commenced within (60) sixty days on adjoining property this lease shall be void from the following date—3-14-41, or void 5-14-41;" and on the left-hand margin appeared "(3-14-41.)" Through these words is drawn a line in ink, which would indicate the clause had been eliminated by scratching out. It is not disputed that this clause, or its elimination, was inserted upon the face of the lease without the knowledge of Theresa Hoppa.

The lease from Theresa Hoppa and Richard Hoppa was procured by Ruwaldt and Bayer, and both lessors were consulted in the negotiations. The negotiation leading to the change in the lease by the insertion of the sixty-days' clause on March 14, 1941, was transacted by Richard Hoppa with Bayer and a man by the name of Riddle. They were together for the purpose of getting Richard to go to Chicago to see the other heirs when Richard wanted to know when they were going to commence drilling on the land. This led up to the insertion of the sixty-days' clause upon the face of the lease. It then developed there had been some talk about paying Richard and his mother $100 for assisting in procuring the signatures of the other heirs, and when Richard called attention to this he was told by Bayer that he could not have both the sixty-days' clause in the lease and the $100, whereupon Richard said he would take the $100 and agreed to have the lines drawn through the clause scratching it out of the lease. Richard denies this to the extent of saying the sixty-days' clause was never canceled. There are, however, several witnesses and a number of circumstances which justify the circuit court in finding to the contrary. A number of persons saw the lease before the heirs in Chicago were visited, with the clause scratched out, and Richard made a number of statements to different persons in effect admitting the clause had been scratched out, and there was testimony of experts to the effect the lines scratching out the clause could not have been written upon the paper to exceed a

half hour after the clause had been written upon the face of the lease.

The negotiations with the five remaining heirs took place in March, 1941, through Riddle, who had been present when Richard and his mother signed the lease. All of these heirs testified the sixty-days' clause was not scratched out. Riddle says it was. There is testimony of at least seven other witnesses, apparently disinterested, who, either from actually seeing the lease or hearing statements from Richard, all prior to the time the lease was taken to the Chicago heirs, indicated the sixty-days' clause had been placed upon and eliminated from the lease before presentation to the five children in Chicago. There was also substantial inducement for the heirs to find something which would invalidate the appellees' lease, inasmuch as each heir, except Richard, received $1000 for signing the new lease with W. C. McBride, Inc., and Richard received $5000, and there was an agreement that they should also receive an overriding royalty of one eighth. The chancellor found from the evidence that the lines drawn through the drilling clause were made within one-half hour after the clause was written, and that both the clause was written and the lines scratching it out were drawn through it before it was presented for signature to the Chicago heirs.

Since the effect of the alteration by writing in of the sixty-days' clause or its scratching out is one of the principal points of contention in the case, as to its effect upon one, all, or any of the appellants, it is necessary to first consider the claim that the lease delivered to appellees is a joint lease, and, therefore, if it is void as to one it is void as to all.

It is not disputed that Richard Hoppa was a minor at the time he signed the lease, and had a right to repudiate it and render it void as to him. It is also contended the alteration of the lease by the insertion of the above-mentioned clause rendered it void as to Theresa Hoppa. If

the instrument was joint in its nature, and was only to become effective upon all of the lessors joining therein, consideration of the other points would become unnecessary.

The lease in this case recites a cash consideration of one dollar. All the tenants in common and their spouses and the widow are referred to as "lessor (whether one or more)," and, in fact, in all materials it is the same form of lease and describes the parties in the same manner as the mineral deed involved in *Logue* v. *Von Almen,* 379 Ill. 208. In that case we held there was nothing in the terms of the deed that prevented it becoming operative as to those who had signed, or which made its operation dependent upon the condition that all of the owners should sign, and that the evidence showed the lessee came into the possession of the deed from the several grantors with the intent such transfer or possession should be a completed delivery. We also said that where a deed shows on its face it is intended to be jointly executed, so that all grantors should be bound by its conveyance, the signing and delivery by a part of such grantors would not make a complete delivery.

The facts in the present case are stronger than in the *Logue case*. Not only are the persons having an interest in the land named in the lease, but every such person in fact signed it. The evidence shows the deed was signed by the widow and the minor son and placed of record, and no attempt made to procure the signature of the remaining heirs for over three months. In fact, the parties apparently proceeded upon the theory that in the first instance they had a lease from the mother and the son Richard, and later on had a lease from all of the parties, whereupon the lease with all of the names was again recorded. We have no doubt of the application of the case of *Logue* v. *Von Almen,* 379 Ill. 208, and hold that it was not the intention of the parties that it required the joint execution of all of the cotenants in said land to render

the lease to appellees valid and, consequently, it is not invalid as a partially executed joint instrument.

This conclusion renders it necessary to examine the situation with respect to the insertion of the clause in question on March 14, 1941, first with respect to Theresa Hoppa, and second as to the five heirs. We are not going to analyze the testimony on this question as it is exceedingly voluminous and conflicting. It is sufficient for determination of the point under consideration as to Theresa Hoppa that it is admitted that when she and Richard Hoppa signed the lease on December 4, 1940, the clause was not in the lease. It appears, without much dispute, that it was put in the lease about March 14, 1941, by Kenneth M. Bayer and Richard, or at any rate before March 18, 1941, the time the five other heirs signed it. The original lease provided it should run for five years, or as long as oil and gas were produced in paying quantities, and as long as the well was not drilled the lessors should receive the sum of $71 per year for delay in drilling. The clause inserted in the lease changed the effect of the original lease to a considerable extent. It rendered the drilling of the well within sixty days obligatory, or the lease ended. If it terminated, the heirs would not receive $71 per year delay payment for the remainder of the term. It was an important change, affecting both duration and rental, and was a material alteration of the instrument.

However, it is contended, but disputed, that within a half hour after the clause had been written in it was scratched out, and it is claimed that by scratching it out it no longer had the effect of an alteration, but left the lease as though it had never been written therein. The remaining five heirs signed and acknowledged on March 18, 1941, and they all testify the clause was on the face of the lease, not scratched out, at the time they signed.

July 15, 1941, Richard Hoppa filed an affidavit charging the lease had been altered after it had been signed, and

July 19, 1941, letters of administration were issued upon the estate of John Hoppa, and Theresa Hoppa, on July 21, 1941, filed her election to waive dower and take a one-third fee interest in said real estate. July 24, 1941, the lease to W. C. McBride, Inc., was executed.

Two questions stand out prominently: (1) The effect of the alteration upon the parties to the lease; and (2) the effect of the signature of Theresa Hoppa at the time when there had been no administration of the estate of her husband, or her election to take a fee instead of dower in the land. Upon the question of alteration, a different situation presents itself between its effect upon the widow and its effect upon the five children living in Chicago. In the first instance, it is admitted the clause, as well as the scratching out of the same, was made upon the face of the lease without the knowledge or the consent of Theresa Hoppa, some considerable time after she had signed it. On the other hand, with respect to the five children living in Chicago it is admitted the clause appeared upon the face of the lease, but the dispute is as to whether at that time it had been eliminated by scratching out, so the alteration, if any, that would affect the interests of the five Chicago heirs would be an alteration brought about by drawing lines through the clause in question, a point which was hotly contested, and upon which there is much conflicting testimony.

The instrument has been certified to this court, and it appears by inspection that upon the face of the instrument there has been an alteration either by the writing in of the clause, or by the scratching out of the clause after it had been written in, or both. Where an alteration in a deed is admitted, or where it is established by inspection, the burden of proof shifts to the person claiming the benefit of the instrument, as altered, to show the alteration was made under circumstances rendering it lawful. (*Tucker* v. *Kanatzar*, 373 Ill. 162; *Waggoner* v. *Clark*,

293 Ill. 256.) As far as Theresa Hoppa is concerned, there is no attempt made to show she had knowledge of, or consented to, this change in the original lease. The rule is elementary that any alteration of a written instrument is material which so changes its terms as to give it a different legal effect from what it originally had, and thus work some change in the rights, obligation, interests or relations of the parties. It is immaterial whether this effect is brought about by interlineation, substitution, change of words or erasures, or by deleting some material provision of the instrument. Such an alteration renders the instrument void. *Newlan* v. *Harrington*, 24 Ill. 207; *Hayes* v. *Wagner*, 220 Ill. 256; *Wood* v. *Steele*, 6 Wall. 80, 18 L. ed. 725; *Keller* v. *State Bank of Rock Island*, 292 Ill. 553.

It is contended, however, the evidence shows the alteration never was completed; that it was written upon the face of the lease, and after it had been written Richard Hoppa agreed to accept $100 for himself and his mother in lieu thereof, and it was immediately scratched out. This would not materially change the legal situation because the restoration of an instrument to its original form, after an unauthorized material alteration, will not avail to revive the instrument and give it force. (Am. Jur. Vol. 2, p. 661; *Snell* v. *Davis*, 149 Ill. App. 391; *Shiffer* v. *Mosier*, 225 Pa. 552, 74 Atl. 426; *Robinson* v. *Reed*, 46 Iowa, 219; *Burgess* v. *Blake*, 86 A. S. R. 78, note pages 118 and 119.) The reason for this is, the alteration attempts to create a new contract without the consent of all parties, and consequently invalidates the instrument altered, and, being rendered invalid, it cannot be revitalized without express agreement. We recognize this rule is not unanimous, but believe it is the sound one, because no one should be permitted to materially change a contract without risk of the consequences thereof. *Master* v. *Miller*, 1 Smith Leading Cases, 1141; *Toomer* v. *Rutland*, 57 Ala. 385, 29 Am. Rep. 722.

Moreover, if the instrument was altered by inserting the clause, and the son Richard undertook to have it eliminated upon the payment of the sum of $100, it did not amount to a restoration, but constituted another alteration, *viz.*, that of eliminating a portion of the lease by erasure or eradication for a consideration. We are compelled to conclude that, so far as Theresa Hoppa is concerned, the alteration of the lease, admittedly appearing after she had signed it and without her consent, had the effect of avoiding it as to her.

Appellees contend Theresa Hoppa is estopped because she signed the lease which contained a warranty of title, but it cannot well be claimed that an instrument which is rendered unenforcible and void because of an alteration made by one of the parties to it remains enforcible as a covenant of title in spite of the alteration. The instrument becomes unenforcible in all of its terms when it has been subjected to a material alteration.

Considerable space has been devoted to the effect of the signature of Theresa Hoppa to the lease at a time when she had not elected whether she would take dower or take one third of the estate in fee. So far as her interest is concerned, it is not necessary to discuss this question, because we have held the alteration of the instrument rendered it invalid as to her. The only effect it may have is its effect upon the interests of the children. The statute gives the surviving widow the right to elect, within one year after the issuance of letters of administration, whether she will retain a fee-simple interest in one third or elect to take dower. (Ill. Rev. Stat. 1935, chap. 41, par. 1.) There is no provision of the statute requiring the surviving widow to take out letters of administration. There is a public officer provided for this purpose in case letters are not promptly taken out. The widow was not deprived of her right to elect because of delay in taking out letters of administration, and since she has elected within the time

fixed by the statute, the effect of her election is to reduce the interest of each one of the children from a one-sixth interest, subject to the dower, to a one-ninth interest in fee.

The alteration which is claimed to affect the rights of the five children who executed the lease in Chicago is the alleged elimination of the inserted clause by drawing lines through it. We think it is apparent, if the clause providing for the drilling within sixty days was upon the lease at the time it was presented to the five Chicago heirs for signature, it would be a material alteration to erase or scratch it out after they had signed it. Upon this question there is a very grave and substantial dispute in the testimony. The circuit court, upon evidence which was conflicting, found the clause in question was inserted on March 14, 1941, and eliminated within a half hour afterwards. There is evidence to support this, and there is also evidence to the contrary. While it is true the Chicago heirs testify the lines were not drawn through the written words, yet determination of this question by the court involved not only what took place on March 14, 1941, between Bayer and Richard Hoppa, but also what took place in Chicago some days later. There is substantial evidence upon both sides of the question, but the chancellor saw and heard the witnesses, and is in a better position to determine where the truth lies than we are. We cannot say the court's finding as to when the alteration was made, and when it was erased, was against the manifest weight of the evidence, and, consequently, hold that the court did not hold against the manifest weight of the evidence in deciding the lines had been drawn through the inserted clause at the time the five Chicago heirs signed the lease in question.

It is also contended that in other respects the findings of the chancellor were against the manifest weight of the evidence. The record in this case consists of over thirteen hundred pages of testimony, the abstracts over eight hun-

dred pages, and the briefs are very voluminous and contain exceedingly diverse views as to what the evidence in the record establishes. We have examined it all with care, and, keeping in mind the number of witnesses alone do not create preponderance, the interest of the witnesses testifying, evidence and circumstances corroborating or impeaching the respective claims, and the expert testimony offered, are satisfied that the findings of the chancellor in these respects are not against the manifest weight of the evidence. On the claim of Theresa Hoppa there is no question of the weight of the evidence. The facts are admitted, and the error of the circuit court was one of law. There is no dispute as to the rights of Richard Hoppa. Having repudiated the lease he executed to appellees and signed a lease to appellants, the court property held he was bound thereby, giving to appellants a lease covering a one-ninth interest in the land in controversy.

As we have held the alteration had the effect of invalidating the signature of Theresa Hoppa to the Bayer lease, and she having acquired a one-third interest in the John Hoppa real estate by her election not to take dower, her signature on appellant's lease granted to them her one-third interest in the land in controversy, the result of which is that appellants are entitled to a four-ninths' interest in the oil and gas by reason of having acquired a lease of the interests of Theresa Hoppa and Richard Hoppa, and the appellees retain the interests which the circuit court held they acquired from the five heirs who executed the appellees' lease in Chicago.

The result is that the decree of the circuit court is reversed, and the cause remanded, with directions to enter a decree in accordance with the views expressed herein.

*Rversed and remanded, with directions.*

Mr. CHIEF JUSTICE FULTON, dissenting.