**Danville UAW CIO Local No. 579 Credit Union, Plaintiff-Appellant, v. Paul A. Randle, et al., Defendants-Appellees.**

Gen. No. 10,605.

Fourth District.

April 19, 1965.

Sebat, Swanson, Banks, Jones & Dukes and Eldon L. McLaughlin, all of Danville (Ralph J. Swanson, of counsel), for appellant.

John B. Jenkins, of Danville (Gunn, Hickman and Kesler, of counsel), for appellees.

TRAPP, J.

The plaintiff, Danville UAW CIO Local No. 579 Credit Union appeals from the judgment of the Circuit Court for the Fifth Judicial District, Vermilion County, that plaintiff take nothing by its action on a judgment note against the nine defendants, who were cosigners on the note. Plaintiff seeks a reversal of that judgment and asks judgment in its favor in the amount of $4,472.29 and costs.

The promissory note, which is the basis of the action and bears date March 7, 1961, was given to secure a loan by the plaintiff credit union to one William R. Fultz, who subsequently became bankrupt and was not made a party defendant. The note is a negotiable instrument upon which the nine defendants were accommodation makers. One E. V. Thompson was also an original signer of the note as an accommodation co-maker, but his signature has been lined through with three or four lines, and E. V. Thompson was not made a defendant. The note contained a power of attorney to confess judgment and an original judgment was entered against the nine defendants on a cognovit. This original judgment was vacated on motion, the cause heard by the trial judge, without a jury, and judgment for the defendants was entered as above stated. A post-trial motion was denied.

The plaintiff contends that the drawing of lines through the signature of E. V. Thompson, co-maker, was not a material alteration but a mere spoliation of the note, having no legal effect thereon. The defendants contend that the crossing out of the signature was a material alteration, which invalidated the instrument sued on.

In support of its contention, plaintiff says the note was completed with eleven signatures as an effective note, and that one George Lawrence, the credit union treasurer, who was deceased at the time of the trial, crossed out the name of E. V. Thompson, without having authority to do so. They contend, therefore, that the co-maker, E. V. Thompson, remained liable upon the note and, as a result, no material alteration occurred. Pursuing this line plaintiff contends that the claim of material alteration is an affirmative defense which must be supported by proof of authority of the agent to cross out the signature, which proof is said to be wholly lacking. Additionally, plaintiff says that, as a matter of law, an agent cannot release his principal's debtor without consideration, that no proof of consideration has been made, and hence, the authority of Lawrence to cross out the name has not been proven.

Defendants contend that the action of George Lawrence, treasurer of the credit union, was within the scope of his authority, and that where the alteration appears on the face of a negotiable instrument, the burden of proof of lack of authority to alter a negotiable instrument is upon the person asserting such want of authority; that no proof of want of authority was introduced, but rather, there was plentiful evidence of conduct ratifying the action of the agent.

■ ■ This court is required to affirm the judgment of the trial court, after trial without a jury, if issues of fact could determine the matter, unless the judgment of the trial court, is clearly contrary to the

87

manifest weight of the evidence. Horns v. Johnson, 17 Ill App2d 314 on 318, 149 NE2d 437; Floyd v. Smith's Estate, 320 Ill App 171 on 177, 50 NE2d 254; United States v. Chicago, R. I. & P. Ry. Co., 171 F2d 377 (CCA 10). If necessary, this court will search the record to affirm the trial court. Richman Chemical Co. v. Lowenthal, 16 Ill App2d 568, 571, 149 NE2d 351.

We think that under the evidence, the trial court was correct in entering judgment for the defendants.

■■ We must hold that where a signature on a negotiable instrument appears to have been cancelled, the burden of proof lies upon the party asserting that such cancellation was made without authority. (Ill Rev Stats 1961, c 98, § 144.) In this case the signature of E. V. Thompson does appear to have been cancelled. This cancellation is on the face of the instrument. The language of the statute is so specific that nothing else is required to support this position. An almost identical principle is announced by the Illinois Supreme Court on alteration of documents other than negotiable instruments. In Ruwaldt v. McBride, 388 Ill 285, 57 NE2d 863 (1944), the court, referring to an alteration of an oil lease, said at p 292:

> "Where an alteration in a deed is admitted, or where it is established by inspection, *the burden of proof shifts to the person claiming the benefit of the instrument,* as altered, to show the alteration was made under circumstances rendering it lawful. (Tucker v. Kanatzar, 373 Ill 162; Waggoner v. Clark, 293 Ill 256.). . . . The rule is elementary that any alteration of a written instrument is material which so changes its terms as to give it a different legal effect from what it originally had, and thus work some change in the rights, obligation, interests or relations of the parties. It is immaterial whether this effect is brought about

by interlineation, substitution, change of words or erasures, or by *deleting* some material provision of the instrument. Such an alteration renders the instrument void. Newlan v. Harrington, 24 Ill 207; Hayes v. Wagner, 220 Ill 256; Wood v. Steele, 6 Wall 80, 18 L Ed 725; Keller v. State Bank of Rock Island, 292 Ill 553." (Emphasis supplied.)

In Merritt v. Dewey, 218 Ill 599, 75 NE 1066 where an alteration, not apparent on the face was shown, the court said at p 606:

"When the defendant had introduced evidence showing a material alteration the burden of proof then shifted to the plaintiff, and it was for him then (where he did not meet such evidence by denial) to show that such alteration had been made under circumstances rendering it lawful or under circumstances which would not preclude a recovery by him. 2 Cyc 234; Shroeder v. Webster, 88 Iowa, 627; Maguire v. Eichmeier, 109 id. 301; Winter v. Pool, 100 Ala 503; Glover v. Gentry, 104 id. 222; National Ulster County Bank v. Madden, 114 NY 280; Gleason v. Hamilton, 138 id. 353; Capital Bank v. Armstrong, 62 Mo 59; Dewees v. Bluntzer, 70 Tex 406."

■ ■ The general rule is that one claiming under an instrument shown to have been materially altered after execution has the burden of establishing the liability of the maker notwithstanding the alteration. 4 Am Jur2d 78, sec 85. This is made so specifically, in the case of apparent cancellation of a signature on a negotiable instrument. Britton, Handbook of the Law of Bills and Notes, 2d ed 1961, p 650 et seq.

■ A change in the number of the parties is a material alteration (Ill Rev Stats 1961, c 98, par 146(4)) and avoids the instrument (Ill Rev Stats 1961, c 98, par 145).

89

The plaintiff contends that as a matter of law there could be no authority in an agent to release a maker, without consideration for such release, after execution of the note. Plaintiff cites Central Republic Trust Co. v. Evans, 378 Ill 58, 37 NE2d 745. In that case a bank president. orally promised certain signers of a note that they would not be held on the note, but that the bank would sell certain securities and look to other parties for payment. The court, on page 66, stated that an executive officer of a bank has no implied authority to bind it by a promise that one who signs a note shall not be required to pay it. The case is in no way controlling here because it does not deal with the alteration of an instrument and especially does not deal with the effect of·alteration of a negotiable instrument.

Sections 119(3), 120(2) and 123 of the Negotiable Instruments Law (Ill Rev Stats 1961, c 98, §§ 140(3), 141(2) and 144) provide for cancellation of liabilities of parties to negotiable instruments without regard to consideration. The fact that, as a matter of general contract law, obligations may not ordinarily be, and sometimes cannot be released without consideration, does not establish such a policy of the law with regard to negotiable instruments. In Keller v. Rock Island State Bank, 292 Ill 553, 127 NE 94; ALR 1082 (1920), the Supreme Court of Illinois held that the alteration of a check by reduction of the amount voided the instrument. The court said, on p 557:

> "It is immaterial whether the alteration is injurious or beneficial to the party who is liable on the instrument. Reducing the amount without the maker's knowledge will avoid the instrument."

The court, on the same page, quoting from Montgomery v. Crosthwait, 90 Ala 553, said:

> "The law proceeds on the idea that the identity of the contract has been destroyed; that the con-

tract made is not the contract before the court; that the party did not make the contract which was before the court; and, so adjudging, it cannot go further and hold him bound by it, on speculations, however probable and plausible, that he would or ought to have entered it in [into] the altered agreement, because it involved less liability than the original and only paper executed by him."

In McCrystall v. Connor, 331 Ill 107 on p 123, 162 NE 375, the Supreme Court of Illinois distinguishes beneficial alterations of other contracts from alterations of negotiable instruments and approves Keller v. Rock Island State Bank, 292 Ill 553, 127 NE 94. The Keller case was followed in National City Bank of St. Louis v. Withus, 237 Ill App 217 on 218, where the interest rate was reduced from 8% to 7%.

The concept of discharge of a negotiable instrument, or of a party thereto, without consideration is explained by Professor William Everett Britton in Handbook of the Law of Bills and Notes, 2d ed 1961, p 650, as follows:

"Cancellation is one of the two forms of discharge which operates as such *without consideration*—renunciation being the other form. The sections, above quoted, codify common law principles. [119(3), 120(2) and 123 of the NIL, being Ill Rev Stats 1961, ch 98 secs 140(3), 141(2) and 144]. *The lack of the requirement of consideration* is due to a fundamental conception of the nature of negotiable paper. Such instruments are regarded as something more than the evidence of a debt. In many situations a negotiable instrument is regarded as the debt itself. This conception is due, in part, to the similarity, in form and function, of commercial paper to that of government currencies

and bank notes. The unitary concept of a debt fused into the written evidence of it, leads readily to the further concept that destruction of the physical res itself by its owner destroys the legal relations which it induces. *Consideration is thus not necessary.* Cancellation then becomes a sort of constructive tearing up of the instrument. Surrender of the instrument to a primary party is similarly analogous to destruction and therefore operates as a discharge—though surrender is not technically regarded as a cancellation but rather as a renunciation.

Not only is a cancellation operative as a discharge *without consideration* but it seems is effective without notice to the obligor." (Emphasis and parenthetic citation supplied.)

Professor Britton goes on to explain in sec 272, pp 649 and 650 of the above cited work, that where a cancellation of a signature is apparent the burden of proof, under sec 123 of the Negotiable Instruments Law (Ill Rev Stats c 98, § 144, 1961), is upon the party asserting that the cancellation was by mistake or without authority. He also explains in the same work that the requirement of a writing for a renunciation under sec 122 of the NIL (Ill Rev Stats c 98, § 143, 1961), does not apply to cancellation under sec 119 (Ill Rev Stats c 98, § 140, 1961). (Similarly sec 120 on parties secondarily liable.) See also Gorin v. Wiley, 215 Ill App 541.

So long as the alteration was intentional, it is not material whether it was fraudulent or non-fraudulent. Britton, Handbook of the Law of Bills and Notes, 2d ed 1961 sec 286, p 674.

Plaintiff's argument that George Lawrence could not have been authorized to strike a name from the note because there was no consideration given for so doing, is not a valid argument so far as the law of

Negotiable Instruments is concerned. In another sense, all material alterations are "unauthorized." There can be no valid authorization to alter a negotiable instrument without the consent of all parties to the instrument. But the Negotiable Instruments Act by sec 124 (Ill Rev Stats 1961, ch 98, par 145), recognizes that *there will be unauthorized alterations* and provides the penalty of avoiding the instrument.

It should be pointed out again, to avoid misunderstandings of this holding, that no member of plaintiff's board of directors and no member of the loan committee testified that George Lawrence was not authorized to handle the instrument as he did. Nor were any minutes giving the exact limitations of his authority produced. Plaintiff relies solely on proof that there was no consideration shown in Keller v. Rock Island State Bank, 292 Ill 553 on 558, 127 NE 94.

So strongly have our courts adhered to the above principles that they have refused to permit correction of the instrument to restore it to the original intent. Ruwaldt v. W. C. McBride, Inc., 388 Ill 285 on 293, 57 NE2d 863; Keller v. Rock Island State Bank, 292 Ill 553 on 558, 127 NE 94.

This court holds that the plaintiff having presented a note, as the basis of a suit, upon which the name of one comaker was apparently cancelled on the face of the instrument, had the burden to prove the lack of authority of the agent to cancel the signature. In view of the record, which justifies a finding of the fullest authority in the agent to handle the obtaining of the instrument and the payout of loan proceeds, and which contains no testimony or documents showing the lack of authority of the agent or the exact limitations of the authority, the plaintiff has failed to sustain the burden of proof imposed by the Negotiable Instruments Law (Ill Rev Stats 1961, c 98, § 144).

In further support of the trial court's judgment, this court is of the opinion that the record discloses the existence of a very broad authority in the treasurer, George Lawrence. The present treasurer testified that the board of directors took no action in reference to approval of loans. The credit committee, which had final approval of loans, left the matter of obtaining good cosigners to the treasurer. The treasurer had control of the payout on the loan. Although only eleven signatures were obtained by the treasurer, the loan committee subsequently approved release of security upon the loan. The defendants claim this established ratification of the treasurer's actions. We think it is perhaps stronger as evidence of authority conferred upon the treasurer to handle the paper in connection with loans.

The parties have not briefed the question which sometimes arises regarding enforcement of the original consideration. Professor William Everett Britton, Handbook of the Law of Bills and Notes, 2d ed 1961, sec 286, p 674, points out that the inability to sue on the instrument does not necessarily prevent suit on the original consideration. Here, however, we have pointed out that if the record sustains the trial court's judgment, it is our duty to affirm it. If the plaintiff had sought to reform the instrument, we think the record would have presented insuperable difficulties. If it had sought to sue on the original consideration it would meet the same difficulties.

Among the affirmative defenses pleaded is one that each of the defendants was informed and believed that the note would not be approved by the plaintiff without the security signatures of fifteen sureties.

There is no evidence which explains the fact that the treasurer obtained only eleven signatures in the face of an apparent direction to obtain fifteen signatures.

Orick Nightlinger, the present treasurer of the plaintiff credit union testified that the minutes of the credit committee on October 10, 1960, bear a notation of Adrian Rhodes, then chairman of the credit committee, that William Fultz, the borrower, must get at least fifteen good cosigners who are in good standing with the credit union, not indebted to it, and who have good security and good records at the plant, but that the notation was not signed by the other members of the credit committee. He testified that the minutes showed the loan approved October 24, 1960, at a meeting at which Adrian Rhodes was not present. Adrian Rhodes testified that his notation reflected the decision of the majority of the credit committee, that George Lawrence advised Adrian Rhodes that he has asked William Fultz to get fifteen cosigners, and that William Fultz asked Adrian Rhodes if fifteen cosigners were required, and was advised that the credit union had agreed to this. Mrs. Maxine Rhodes, an employee of the credit union, testified that the credit committee could enlarge the number upon, or require less cosigners than those originally required, and that the treasurer, George Lawrence, could do so likewise.

William R. Fultz, the borrower, testified that he was to get fifteen cosigners, R. L. Kelly, Robert D. Jackson, Paul A. Randall, and Jack Burroughs, defendant cosigners, were told by George Lawrence, treasurer, there would be fifteen cosigners, Paul A. Randall testified he would have refused to sign if there were to be less. There is no evidence that the order written by Adrian Rhodes, chairman, in the minutes and communicated to the cosigners, was countermanded.

The law in this situation is stated in 50 Am Jur p 1010, Suretyships, sec 162, as follows:

"If, at the time of delivery and acceptance, the obligee has actual or constructive notice that the

surety signed on an express condition that the bond was not to be delivered without the signatures of other sureties, the surety who signed will not be bound if the condition is not performed."

This rule is made effective through our Negotiable Instruments Law (Ill Rev Stats c 98, § 36, 1961), which provides:

"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional or for a special purpose only. . . ."

■ This section has been construed by our courts to mean that parol evidence is admissible to show conditions attaching to the delivery of the instrument. Straus v. Citizens State Bank, 164 Ill App 420; Schmidt v. Schmidt, 253 Ill App 514.

■ Under the record in this case, the trial court is justified in concluding that the defendants executed the note upon the condition that there would be fifteen cosigners, and it is very clear that such condition was not satisfied.

The judgment of the trial court is affirmed.

SMITH, P. J. CRAVEN, J., concur.