CHARTER FINANCE COMPANY, Plaintiff-Appellee, *v.* VERNON HENDERSON *et al.*, Defendants-Appellants.

(No. 72-176;

Fifth District—October 12, 1973.

*Rehearing denied November 16, 1973.*

G. MORAN, J., dissenting.

Margaret Stapleton, of Land of Lincoln Legal Assistance Foundation, Inc., of Cairo, for appellants.

Downs & Johnson, of Cape Girardeau, Missouri, (Gerald Johnson, of counsel,) for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

On June 22, 1971, Charter Finance Company, the plaintiff-appellee, brought an action in the Circuit Court of Alexander County to recover on a note signed by the defendants-appellants, Vernon Henderson and Helen Henderson, his wife, in May 1970. The matter went to trial on March 7, 1972, and on March 27, 1972, judgment was rendered for the plaintiff finance company in the amount of $1,462.09. The note was for $1,872. Following trial, defendants moved to vacate the judgment and dismiss the complaint. The motion was denied and on April 25, 1972, notice of appeal was filed with this court.

The facts show that Charter Finance Company is a Missouri corporation with an office in Cape Girardeau, Missouri. This is the office with which the defendant did business. The finance company has no office or place of business in Illinois. The defendants-appellants reside in Olive Branch, Illinois, in Alexander County. The record indicates that the note in question was signed either on May 11 or May 13, 1970, at their home. An employee of the company brought the note for signing. The record is not clear as to who this agent was. The defendant, Helen Henderson, stated that it may have been someone called Pat Patterson. The signature of the witness on the note is that of Mr. H. G. Boner, an employee of the finance company. According to the defendants' testimony, Mr. Boner had visited their premises on one or possibly two occasions prior to the one in question in connection with loans they had obtained from the finance company. Defendants testified and it is supported by the record that the note which they signed in May, 1970, was signed in blank. They also testified, and there is nothing in the record to controvert their testimony, that they did not receive a copy of the note after it was completed by the company and that they first saw it when they were served with the complaint in the trial court action.

Since the record shows that this note was signed in blank, we must first inquire as to whether or not the note was valid. In support of its validity, appellee urges two points: (1.) That this was not a new loan but was a refinancing of prior indebtedness, (2.) That there was no evidence that the defendants had not authorized the finance company to complete the blank note.

Though defendants' testimony on the point is not clear, it does indi-

cate that there was a prior indebtedness; they had borrowed money from Charter Finance over a period of years. The note in question, number DL 5082, under item 5B, shows an old balance less refunds of $1,208.42 on loan number D2514. Also, the note in question in item 6 shows that no cash difference was paid to the borrower. We think it is established that this note was in fact executed for the purpose of refinancing a prior unpaid indebtedness.

■■  With respect to plaintiff-appellee's second contention that there is no evidence showing that defendants had not authorized plaintiff-appellee to complete the bank note, we find provisions in section 3—115 of the Uniform Commercial Code (Mo. Rev. Stat., sec. 400.3—115; Ill. Rev. Stat. 1971, ch. 26, par. 3—115) controlling. This section provides that "When a paper whose contents at the time of signing show that it is intended to become an instrument is signed while still incomplete in any necessary respect it cannot be enforced until completed, but when it is completed in accordance with authority given it is effective as completed." This section then goes on to say "* * * but the burden of establishing that any completion is unauthorized is on the party so asserting." Does the record show that this burden has been met by the defendants. We think not. Defendant Vernon Henderson testified that he cannot read, and while defendant Helen Henderson stated that she did not try to read the form because she wouldn't understand it, even a casual glance at the instrument while she was signing would have indicated that it was a note. This coupled with prior knowledge of indebtedness to the loan company would indicate strongly to a signer that the blank instrument being signed was in fact a note. Testimony of the defendants that they were told by the company employee who brought the instrument to their home that the company needed this instrument for the auditors does not conflict with such an instrument being a note.

■■  Both appellant and appellee cite *Hutcheson v. Herron*, 131 Ill. App.2d 409, 266 N.E.2d 449, and *Danville U.A.W.—C.I.O. Local No. 579 Credit Union v. Randle*, 58 Ill.App.2d 84, 206 N.E.2d 253. In the *Hutcheson* case the court held that there was no showing that the creditor was not authorized to fill in the interest rate where this had been left blank and to insert a definite period for repayment in place of "on demand." In the *Randle* case the court held a note not collectible where one cosigner's name was stricken by the creditor's treasurer and where only 11 of 15 required cosigners in fact signed the note. This case is not in point with respect to authority to fill in blanks. Appellants cite *Phoenix Finance Co. v. Papajeski*, 2 Ill.App.3d 85, 276 N.E.2d 117. In this

case, recovery on a note was barred because plaintiff did not indicate the nature of the security taken on the defendant's loan statement. In the instant case the nature of the security does appear on the note. Appellee cites *Bartolomucci v. Clarke*, 60 Ill.App.2d 229, 208 N.E.2d 616, to support the view that payments made after the note was executed and the blanks filled constituted an admission on the part of the defendants that the plaintiff had authority to fill the blanks. In that case the court said that payments made after the note was completed was a judicial admission that the plaintiff had authority to fill the blanks. The Hendersons admitted that they did make two payments of $15.00 after execution of the note though it is not clear from their testimony whether they thought they were paying on the note in question or on a prior obligation. Supportive of the court's opinion in the *Bartolomucci* case are *Nowak v. Schrimpf*, 44 Ill.App.2d 309, 194 N.E.2d 547; *McCormack v. Haan*, 20 Ill.2d 75, 169 N.E.2d 239; and *Schnitzer v. Kramer*, 189 Ill. App. 350, 109 N.E. 695. In this latter case the court stated that additions or insertions made in conformity with the apparent character and object of the blank are proper and binding upon the maker. In *Krueger v. Dorr*, 22 Ill.App.2d 513, 161 N.E.2d 433, another case cited by the appellee, the facts differed in that the court did not find that any material items had been left blank but only that "some immaterial blanks not affecting at all the substance of the obligation may have been filled in later."

Missouri cases which have adopted a view similar to that in Illinois with regard to authority to fill up blanks in a note given for security are *Fitzgibbon Discount Corp. v. Hatchett*, 427 S.W.2d 786 (name of payee filled in); *Commercial Investment Co. v. Whitlock*, 217 Mo.App. 676, 274 S.W. 833 (date of acceptance and name of drawee added); and *Farmers Bank v. Garten*, 34 Mo. 119 (amount filled in later).

In view of the evidence in the record, of authority cited and of our construction of section 3—115 of the Uniform Commercial Code we hold that the note was legally executed and valid.

Provisions of the Illinois Consumer Installment Loan Act (Ill. Rev. Stat. 1971, ch. 74, par. 51 *et seq.*) which states that it shall not apply to loans "legally made in any other state" (par. 69) in our opinion are not applicable. Charter Finance Company is a Missouri corporation with its office in Cape Girardeau and with no office or place of business in Illinois. The note in question was payable at appellee's Cape Girardeau office. Defendants conceded that the note which was signed in blank in Illinois was "made in any other state," meaning Missouri, but they argue that the note was not *legally* made and hence provisions of the Illinois Consumer Loan Act apply. Since we have concluded that the

note was legally made, this contention is inapplicable. According to Restatement of Conflict of Laws, Second, sec. 195, the local law of the place where a loan contract requires repayment is applicable with respect to contracts for the repayment of money lent, unless there are compelling reasons otherwise. Even a mortgage on property in the other state does not keep the rule from applying (Comment a.). We think this is sound law and that in this case the law of Missouri applies.

██ With respect to appellant's contention that appellee was transacting business in Illinois without procuring a certificate of authority from the Secretary of State as required by section 102 of the Illinois Business Corporation Act (Ill. Rev. Stat. 1971, ch. 32, par. 157.102) and hence under provisions of sec. 125 of that Act could not maintain an action in any court in Illinois, we must, in absence of proof to the contrary, assume that appellee was not transacting business in Illinois within the meaning of sec. 102. Although the record indicates that perhaps two or three percent of the appellee's business is conducted with Illinois residents, there is no indication of the manner in which or where this business is conducted. In view of the fact that appellee had not procured a certificate of authority and of the fact that so far as the record discloses had not been requested to procure such a certificate, we assume that the Charter Finance Company was not in violation of Illinois law. The burden was on appellants to show this. (*Air Conditioning Training Corp v. Majer,* 324 Ill.App. 387, 58 N.E.2d 294; *United Newspapers Magazine Corp. v. United Advertising Cos.,* 297 Ill.App. 637, 17 N.E.2d 345; *Visible Measure Gasoline Dispenser Co. of Amerca v. Suprunowski,* 226 Ill.App. 107; *Delta Bag Co. v. Kearns,* 160 Ill.App. 93.) Appellant has cited no authority interpreting the meaning of "transacting business in this State," though there is a considerable body of case law interpreting section 102.

We find that the contract is valid and the judgment in favor of plaintiff-appellee stands. Any remedies to which appellants may be entitled for failure of the appellee to meet the requirements of the Federal Consumer Credit Protection Law or of section 408.130 of the Missouri Revised Statutes must be pursued in a separate action.

Affirmed.

EBERSPACHER, P. J., concurs.

Mr. JUSTICE GEORGE J. MORAN dissenting:

The Business Corporation Act provides in section 102 (Ill. Rev. Stat. 1971, ch. 32, par. 157.102) that:

"A foreign corporation organized for profit, before it transacts

business in this State, shall procure a certificate of authority to do so from the Secretary of State * * *"

Section 125 of the Business Corporation Act (Ill. Rev. Stat. 1971, ch. 32, par. 157.125) provides in part:

"No foreign corporation transacting business in this State without a certificate of authority is permitted to maintain a civil action in any court in this State, until such corporation obtains a certificate of authority."

Plaintiff Charter Finance Company is a Missouri corporation. The general manager of the Charter Finance Company office at Cape Girardeau, Missouri, testified at trial:

"The primary business of Charter Finance is the lending of money for profit. Charter Finance is not licensed to do business in the State of Illinois * * * Charter Finance transacts business with Illinois residents. Charter Finance does 2% or at most 3% of its total business with Illinois residents. Charter Finance Company does not have a certificate of authority to do business in the State of Illinois."

Defendants testified without contradiction that the note in question was brought by agents of the plaintiff to defendants' home in Olive Branch, Illinois, and there signed.

The majority opinion states that "* * * we must, in absence of proof to the contrary, assume that appellee was not transacting business in Illinois within the meaning of sec. 102." This assumption is untenable in light of the admission of the general manager of appellee that Charter Finance transacts business with Illinois residents and the uncontradicted testimony of defendants that the note in question was signed in their home in Illinois. If the action of a foreign corporation engaged in the business of lending money for profit in going into an Illinois home to have promissory notes signed by Illinois residents does not constitute "transacting business" in Illinois, it is difficult to imagine what does constitute "transacting business" in Illinois.

I also disagree with that portion of the majority opinion which states: "In view of the fact that appellee had not procured a certificate of authority and of the fact that so far as the record discloses had not been requested to procure such a certificate, we must assume that the Charter Finance Company was not in violation of Illinois law." No one need "request" the procurement of the certificate; the law requires it. Since the law requires a certificate of authority and plaintiff did not have such certificate, the only assumption which I can make is that Charter Finance *was* in violation of Illinois law.

The Business Corporation Act prohibits corporations transacting business in this state without a certificate of authority to maintain a civil action in any court in this state. Defendants raised this defense in their answer and properly preserved it on appeal.

I respectfully dissent. I would hold that the plaintiff was precluded from bringing suit in this case because of the reasons stated in this dissent.